**CA PARTNERS, Appellant,**

v.

**Marshall SPEARS and CitiFinancial, Inc., Appellees.**

No. 14–07–00057–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 26, 2008.

Rehearing Overruled Dec. 18, 2008.

Noel West Short, Georgetown, Gregory Sherwood, Austin, Travis D. Weitzel, Georgetown, for appellant.

Corwin L. Teltschik, John Hatchett McFarland, L.T. Bradt, Betsy Lynn Grubbs, Justin Presnal, Houston, for appellees.

Panel consists of Justices FOWLER, SEYMORE, and GUZMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant CA Partners sued appellees Marshall Spears and CitiFinancial, Inc., seeking reformation of a deed of trust and judicial foreclosure of real property owned by Spears and subject to a security interest held by CitiFinancial. Spears counterclaimed, asserting causes of action for, among other things, violation of the Deceptive Trade Practices Act, the Fair Debt Collection Practices Act, and the Texas Finance Code. CitiFinancial also counterclaimed, seeking a declaratory judgment that its lien was superior to any held by CA Partners on Spears's real property. After a bench trial, the trial court granted relief to Spears and CitiFinancial on their counterclaims. CA Partners then brought this appeal.

**Factual and Procedural Background**

In December 1989, Spears contracted with Lyle Construction Company to remodel his home, located at 7314 Nightingale in Texas City. Spears financed the remodeling work through Goldome Credit Corporation, and executed a promissory note ("the Note") and a deed of trust ("the Deed"), granting Lyle Construction Co. a lien on his real property. The Deed described Spears's real property as follows:

> Lto [sic] 84, Block 4, SOUTH ACRE MANOR, SECTION 3, an Addition in Galveston County, Texasm [sic] according to the map or plat thereof recorded in Volume 1616, Page 106, recorded in the Office of the County Clerk of Galveston County, Texas.

However, Spears's home was actually located on Lot 85; Spears did not own Lot 84.

The terms of the Note required Spears to make payments in 120 monthly installments, the first of which was due on February 1, 1990. The Deed further provided that "[s]aid Note is payable to [Lyle Construction Co.] in 120 equal successive monthly installments of $217.25 each, except the final installment, which shall be the balance then due on the Note." Spears eventually defaulted on the Note, but the Note was never accelerated.

In August 2005, the Note and the Deed were assigned to CA Partners, a sole proprietorship of which Randall B. Johnson is "managing partner" and sole owner. CA Partners sent two notices of default and demands for payment to Spears: one in September 2005, in the amount of $14,760.05, and the second in October 2005, in the amount of $15,013.04.[1] The second notice was accompanied by a "NOTICE OF FORECLOSURE SALE WITH NOTICE OF DESIGNATION OF SUBSTITUTE FORECLOSURE TRUSTEE," which provided, among other things, that Johnson was designated as substitute trustee to foreclose CA Partners's lien on the property described in the Deed, and that a foreclosure sale would be held in the lobby of the Galveston County Courthouse on November 1, 2005.

CA Partners was the sole, and therefore winning, bidder at the foreclosure sale.

---

1. The second notice of default and demand for payment represented that Spears's debt "originated from the Contract for Labor and Materials and Trust Deed [Spears] executed with Western Building and Supply Company," and that "[t]he amount owed on this debt is $14, 633.91 . . . ." However, on cross- and redirect examination, Johnson testified that Spears never executed a Contract for Labor and Materials and Trust Deed with Western Building and Supply Co. Johnson further testified that paragraph 2 of the second notice of default mistakenly recites that Spears contracted with Western Building and Supply Co., instead of Lyle Construction Co., that the amount of debt listed in that paragraph is not accurate, and that the accurate amount of Spears's debt is listed at the top of the notice.

Johnson, acting in his capacity as substitute trustee, executed a "SUBSTITUTE TRUSTEE DEED" ("the Trustee Deed"), which purported to convey Spears's interest in the real property located at 7314 Nightingale, together with "all right, title, and interest of [Spears], if any, in and to any personal property located thereon," to CA Partners.

CA Partners then sent a "Notice Terminating Right of Occupancy" to Spears, notifying him that he had thirty days from the date of receipt to vacate the premises located at 7314 Nightingale. When Spears failed to do so, CA Partners sued to evict Spears from the property.[2] On appeal from the eviction, Spears notified the court that the Deed contained an incorrect property description, and the court dismissed the eviction action. CA Partners then filed this suit against Spears and CitiFinancial,[3] seeking reformation of the Deed and judicial foreclosure of Spears's real property.

Spears counterclaimed, alleging tortious interference with contract, slander of title, and violations of the Deceptive Trade Practices Act, the Fair Debt Collection Practices Act, and the Texas Finance Code. Spears also sought a declaratory judgment that the Deed did not provide a lien on his personal property, and that the debt and lien were barred by the statute of limitations.

Spears filed a motion for partial summary judgment, arguing that the statute of limitations had run on both collection of the Note and reformation of the Deed. Spears asserted that his last payment on the Note was due—and therefore limitations began to run—on January 1, 2000. Because CA Partners did not file suit until April 28, 2006, Spears argued that all of CA Partners's causes of action were barred by the applicable four- and six-year statutes of limitations.[4]

CA Partners responded, arguing that the statute of limitations had not run on the debt, in part because Spears had con-

2. Apparently, the justice of the peace court granted CA Partners's petition for forcible entry and detainer. Although the order granting that petition is absent from the record on appeal, Spears testified in the proceedings below that he was present in court when the forcible entry and detainer lawsuit was tried, that the judge made a decision and ruled against him, and that he appealed that decision to the county court. A copy of CA Partners's "Original Petition For Forcible Detainer" was admitted at trial as Defendant's Exhibit 2, and is included in the record on appeal.

3. CitiFinancial was included as a defendant in the present suit because it holds a lien on Spears's real property. According to CitiFinancial's trial exhibits, on October 17, 2002, Spears executed a deed of trust with CitiFinancial to secure a loan in the amount of $55,253.16. That deed of trust correctly described Spears's real property as "Lot 85," located at 7314 Nightingale, in Texas City. Then, on October 14, 2004, Spears executed a

second deed of trust with CitiFinancial, to secure a loan in the amount of $58,632.17. The second deed of trust also correctly described Spears's real property, and was recorded in the Galveston County clerk's office. According to CitiFinancial's brief, the 2004 loan was a refinance of Spears's 2002 loan.

4. Specifically, Spears asserted that (1) under section 16.035 of the Civil Practices and Remedies Code, a four-year statute of limitations applied to suits on a "note secured by real estate"; (2) under CPRC section 16.051, the residual four-year statute of limitations applied to suits to reform a deed; and (3) under section 3.118 of the Business and Commerce Code, a six-year statute of limitations applied to suits on a "note payable at a certain time." Because the deadline for CA Partners to file suit was January 1, 2004 under the four-year statutes of limitation and January 1, 2006 under the six-year statute of limitations, Spears argued that he was "entitled to summary judgment under all of the three methods of calculation of the statute of limitations."

tinued to make payments on the Note until May 2004. CA Partners submitted an affidavit sworn to by Johnson to substantiate its assertion.

Spears objected to Johnson's affidavit, arguing (1) the entirety of the affidavit is hearsay within hearsay, not falling within any of the exceptions to the hearsay rule, (2) the affidavit contains no supporting records, and (3) it is conclusory. The trial court sustained Spears's objections, struck Johnson's affidavit, and then refused CA Partners's request under Rule 166a(f) of the Texas Rules of Civil Procedure to supplement Johnson's affidavit with supporting records. Ultimately, the trial court granted Spears's motion for partial summary judgment.

The parties then tried their remaining claims to the bench. On the second day of trial, CitiFinancial filed a motion for leave to file a counterclaim, which the trial court granted over CA Partners's objection. CitiFinancial then counterclaimed, seeking a declaratory judgment that its lien "holds a priority position over any lien on the property held by Plaintiff CA Partners...." That same day, Spears requested a trial amendment on his counterclaim naming the counterdefendant as "CA Partners and Randall Johnson doing business as CA Partners." The trial court granted Spears's request for a trial amendment, again over CA Partners's objection.

The trial court ultimately granted relief to Spears and CitiFinancial on their counterclaims. It entered judgment against Johnson, individually and doing business as CA Partners, for violating the DTPA, the Fair Debt Collection Practices Act, and the Texas Finance Code, and awarded Spears $2,500 in actual damages, $25,000 in mental anguish damages, and $55,000 in additional damages for a "knowing" violation of the DTPA. The trial court also awarded Spears $1,000 in additional damages under section 1692k(a)(2)(A) of the Fair Debt Collection Practices Act.

In addition, the trial court granted Spears a declaratory judgment against Johnson, individually and doing business as CA Partners, that (1) the Deed did not create a lien on Spears's personal property; and (2) Johnson has no lien on Spears's real property. The trial court also granted CitiFinancial a declaratory judgment against Johnson, individually and doing business as CA Partners, that (1) Johnson has no lien on Spears's real property; and (2) CitiFinancial's lien is superior to any other lien on Spears's property.

The trial court further ordered that Johnson be permanently enjoined from (1) engaging in debt collection until he posts a surety bond with the Secretary of State in accordance with section 392.101 of the Texas Finance Code; and (2) using the name CA Partners as an assumed name in debt collection in the State of Texas.

Finally, the trial court entered a judgment against Johnson, individually and doing business as CA Partners, for Spears's and CitiFinancial's attorney's fees, awarding attorney's fees in the amounts of $124,450 to Spears and $45,975 to CitiFinancial, and for pre- and post-judgment interest and costs.

CA Partners timely filed its notice of appeal. It then requested the trial court to file findings of fact and conclusions of law, which the trial court ultimately did.[5]

---

5. CA Partners also timely filed a formal bill of exceptions, to which it attached one cashier's check and seven money orders. The cashier's check and money orders purportedly represent eight payments made by Spears on the Note from April 2003 to May 2004. These are the same supporting documents with which CA Partners requested under Rule 166a(f) of the Texas Rules of Civil Procedure to supplement Johnson's summary judgment affidavit.

### Issues on Appeal

■ In eight issues, CA Partners challenges various aspects of the trial court's judgment.[6] In its first and second issues, CA Partners contends that the trial court erred in granting Spears's motion for partial summary judgment. In its third issue, CA Partners argues that the trial court erred in refusing to reform the Deed to state the correct lot number for Spears's residence. In its fourth and sixth issues, CA Partners asserts that the trial court erred in granting Spears's counterclaims for violations of the DTPA, the Fair Debt Collection Practices Act, and the Texas Finance Code. In its fifth issue, CA Partners argues that the trial court erred in awarding judgment against Johnson individually, and in issuing permanent injunctions against Johnson. In its seventh issue, CA Partners asserts that the trial court erred in awarding attorney's fees to Spears because he failed to segregate time incurred between fee-recoverable and non-fee recoverable matters, and because the amount of appellate attorney's fees awarded was "extravagant" and excessive. In its final issue, CA Partners contends that the trial court erred in allowing CitiFinancial to file a counterclaim in the middle of trial.

We agree only with CA Partners's seventh issue, that Spears was required to segregate attorney's fees. Because the trial court's award of attorney's fees to Spears was based upon evidence of unsegregated fees, we reverse that portion of the trial court's judgment awarding attorney's fees to Spears, sever that portion of the judgment, and remand the cause to the trial court for a new trial on Spears's recoverable attorney's fees. We overrule the remainder of CA Partners's issues and affirm the trial court's judgment in all other respects.

### Analysis of CA Partners's Issues

#### I. The Trial Court Did Not Err in Granting Spears's Motion for Partial Summary Judgment and in Refusing to Reform the Deed.

In its first and second issues, CA Partners contends that the trial court erred in granting Spears's motion for partial summary judgment because (1) the trial court improperly struck Johnson's affidavit and refused to grant leave to amend the affidavit, and the affidavit created a fact issue on limitations; (2) the maturity date of the last installment on the Note did not trigger the running of the statute of limitations; and (3) the evidence proved that Spears's last payment on the Note was made within the limitations period and the Note was accelerated within the limitations period. In its third issue, CA Partners contends that the trial court erred in refusing to reform the Deed, because a limitations bar—if it applies—only destroys the remedy, and not the underlying debt. We consider each of appellant's arguments in turn.

#### A. The Trial Court Did Not Err in Striking Johnson's Affidavit and Refusing to Grant Leave to Amend the Affidavit.

6. In its brief, CA Partners indicates that Johnson is also an appellant, although, in its words, "[he is] not a party to this action." However, the record indicates that CA Partners is a sole proprietorship, and Johnson is its sole owner. As we explain in our discussion of CA Partners's fifth issue, Texas law regards the sole proprietor and the sole proprietorship as one and the same person. *See CU Lloyd's of Tex. v. Hatfield*, 126 S.W.3d 679, 684 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (citing *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 952 (Tex. 1983)). Accordingly, we refer to CA Partners and Johnson collectively as "CA Partners," unless otherwise specified.

■ CA Partners first argues that the trial court erred in striking Johnson's affidavit as being conclusory and containing hearsay, and in refusing to grant leave to amend the affidavit. CA Partners asserts that Spears's objections to Johnson's affidavit were unfounded because (1) the statement "the last payment on the Note at issue from Marshall Spears was for $111.50, received in May 2004" is a statement of fact, and therefore not conclusory; and (2) the affidavit is a business records affidavit, admissible under Rule 803(6) of the Texas Rules of Evidence, and thus is not objectionable on hearsay grounds. CA Partners finally asserts that, under Rule 166a(f) of the Texas Rules of Civil Procedure, the trial court should have granted leave to amend Johnson's affidavit with the payment documents from 2003–2004, citing us to our holding in *Martin v. Durden*, 965 S.W.2d 562, 565 (Tex.App.-Houston [14th Dist.] 1997, pet. denied).

Because we agree with Spears that Johnson's affidavit is conclusory, we conclude that the trial court did not err in striking or in refusing to grant leave to amend the affidavit. Therefore, as we explain below, we overrule CA Partners's first issue.

### 1. Standard of Review and Applicable Law

■ We review a trial court's decision to strike an affidavit submitted in response to a motion for summary judgment for an abuse of discretion. *See Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998) (stating that evidentiary rulings are committed to the trial court's sound discretion). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *See Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). A trial court also abuses its discretion when it fails to analyze or apply the

law correctly. *In re Sw. Bell Tel. Co., L.P.*, 226 S.W.3d 400, 403 (Tex.2007).

■■ In a motion for summary judgment, supporting and opposing affidavits must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein. Tex.R. Civ. P. 166a(f); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex.1996). Conclusory statements in an affidavit unsupported by facts are insufficient to defeat summary judgment. *1001 McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital*, 192 S.W.3d 20, 27 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (citing *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex.1997)); *see Ryland Group, Inc.*, 924 S.W.2d at 122 (stating that conclusory affidavits are insufficient to raise fact issues that will preclude summary judgment). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *1001 McKinney Ltd.*, 192 S.W.3d at 27; *see Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex.1999) (stating that a witness's affidavit is conclusory if it fails to explain the basis of the witness's statements to link his conclusions to the facts).

■■ Furthermore, challenges to summary judgment affidavits as conclusory allege a defect in substance rather than form. *See* Tex.R. Civ. P. 166a(f); *EOG Res., Inc. v. Killam Oil Co.*, 239 S.W.3d 293, 302 (Tex.App.-San Antonio 2007, pet. denied). If a defect in a summary judgment affidavit is one of substance, the trial court is not required to provide an opportunity to amend. *See* Tex.R. Civ. P. 166a(f); *EOG Res., Inc.*, 239 S.W.3d at 302 (citing *Clendennen v. Williams*, 896 S.W.2d 257, 260 (Tex.App.-Texarkana 1995, no writ)).

### 2. Application of Law to the Facts

Here, we cannot conclude that the trial court abused its discretion in sustaining Spears's objection that Johnson's affidavit is conclusory. We begin by reviewing Johnson's affidavit, in its entirety:

> I am Randall Johnson. I am Managing Partner of CA Partners. I am over the age of eighteen (18) years and have never been convicted of a felony. I am fully authorized to make this affidavit. The facts stated herein are within my personal knowledge and are true and correct.
>
> I have reviewed [CA Partners's] Response to [Spears's] Motion for Summary Judgment. I hereby certify in my official capacity as Managing Partner of CA Partners, that the last payment on the Note at issue received from Marshall Spears was for $111.50, received in May 2004. In deducing this amount and date of payment, I have consulted records which were made and kept in the course of a regularly conducted business activity. It was the regular practice of the business activity to make such records. The records were made at or near the time of the event that it records. The records were made by, or from information transmitted by, a person with knowledge acting in the regular course of business.

It is immediately apparent that Johnson did not state any facts upon which he based his conclusion that Spears's last payment on the Note was for $111.50 and received in May 2004. Nowhere does Johnson provide readily controvertible facts personally known to him, much less link his conclusion to these facts. He does not identify the company where payments were made, how he knew that the records were kept in the regular course of business, or which company kept the records in the regular course of business. Most notably, he does not aver that the records were kept in the regular course of business by CA Partners or a predecessor owner. For these reasons, Johnson's affidavit is conclusory, and the trial court did not abuse its discretion in striking the affidavit. See *Earle*, 998 S.W.2d at 890.

Moreover, because Johnson's affidavit is conclusory—which is a defect in substance—the trial court was not required to provide CA Partners an opportunity to amend the affidavit. *See* Tex.R. Civ. P. 166a(f); *EOG Res., Inc.*, 239 S.W.3d at 302; *Clendennen v. Williams*, 896 S.W.2d at 260. We therefore overrule CA Partners's first issue.

### B. The Trial Court Correctly Ruled that Limitations Barred CA Partners's Claims.

CA Partners next contends that the trial court erred in granting Spears's motion for partial summary judgment because (1) the maturity date of the last installment on the Note did not trigger the running of the statute of limitations; and (2) the evidence proved that Spears's last payment on the Note was made within the limitations period and the Note was accelerated within the limitations period.[7] CA Partners asserts that Spears made payments on the Note until May 2004. CA Partners also claims that limitations did not begin to run on the maturity date of the last installment—January 1, 2000—because its predecessor-in-interest never accelerated the maturity of the Note. CA Partners argues that, under the holding of

---

7. CA Partners also contends that the trial court erred in granting Spears's motion for partial summary judgment because Johnson's "improperly-struck" affidavit created a fact issue on limitations. However, in light of our holding that the trial court did not err in striking Johnson's affidavit, we need not address this argument.

the Texas Supreme Court in *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566–67 (Tex.2001), its cause of action did not accrue—and therefore limitations did not begin to run—until it actually accelerated the maturity of the Note and demanded payment in September 2005.

Spears asserts that the statute of limitations had run on the debt because the date of maturity triggered the running of the statute of limitations, and CA Partners did not file suit until after the limitations period had expired. Spears further asserts that none of the payments allegedly made reaffirmed the debt, and that if CA Partners wanted to contend that any of his payments constituted a reaffirmation agreement, then it should have sued on the reaffirmation and not the original debt.

### 1. Standard of Review

We review the trial court's grant of summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 156–57 (Tex.2004). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Aguirre v. Vasquez,* 225 S.W.3d 744, 750 (Tex.App.-Houston [14th Dist] 2007, no pet.). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe,* 145 S.W.3d at 157; *Aguirre,* 225 S.W.3d at 750.

A defendant seeking summary judgment on the basis of limitations must conclusively establish that defense. TEX.R. CIV. P. 166a; *Holy Cross Church of God in Christ,* 44 S.W.3d at 566. In this situation, the defendant/movant must prove when the cause of action accrued. *See Holy Cross Church of God in Christ,* 44 S.W.3d at 566; *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *KPMG Peat Marwick,* 988 S.W.2d at 748.

### 2. Accrual and Limitations

By statute, if a note payable in installments is secured by a lien on real property, limitations does not begin to run until the maturity date of the last installment. TEX. CIV. PRAC. & REM.CODE § 16.035(e); *see Holy Cross Church of God in Christ,* 44 S.W.3d at 566. Section 16.035 modifies the general rule that a claim accrues and limitations begins to run on each installment when it becomes due. *Holy Cross Church of God in Christ,* 44 S.W.3d at 566.

If a note or a deed of trust secured by real property contains an optional acceleration clause, default does not start limitations running on the note. *Id.* Rather, the action accrues only when the holder actually exercises its option to accelerate. *Id.* However, the holder of a note may only "accelerate" the maturity date of the note if its last installment is not yet due. *See* BLACK'S LAW DICTIONARY 12 (8th ed. 2004) (defining acceleration as "[t]he advancing of a loan agreement's maturity date"). Once the maturity date of the last installment has passed, the holder may not "accelerate" the note. Rather, the holder's cause of action accrues—and therefore limitations begins to run—on the maturity date of the final installment. TEX. CIV. PRAC. & REM.CODE § 16.035(e).[8]

8. Section 16.035(e) provides:

If a series of notes or obligations or a note

Under Texas law, a suit for foreclosure of a real-property lien or a sale of real property under a power of sale in a deed of trust that creates a real-property lien must be made not later than four years after the day the cause of action accrues. Tex. Civ. Prac. & Rem.Code § 16.035(a), (b); *Holy Cross Church of God in Christ*, 44 S.W.3d at 567. When this four-year period expires, the real-property lien and the power of sale to enforce the lien become void. Tex. Civ. Prac. & Rem.Code § 16.035(d). However, this four-year limitations period can be suspended by filing a written agreement in the county clerk's office where the real property is located. *Id.* § 16.036.

### 3. Application of Law to the Facts

CA Partners's argument—that its cause of action accrued when it actually "accelerated" the maturity of the Note and demanded payment in September 2005—is premised on the belief that the Note did not mature on a date certain. That is without merit. The maturity date is the date upon which the final installment is due. *See* Tex. Civ. Prac. & Rem.Code § 16.035(e) (stating that, if a note payable in installments is secured by a real property lien, the four-year limitations period begins to run on the maturity date of the last installment). Here, the Note required Spears to make 120 successive monthly installments of $217.25, beginning on February 1, 1990. Thus, the Note matured on January 1, 2000, the date upon which Spears's final installment was due. *See*

*id.; Holy Cross Church of Christ*, 44 S.W.3d at 567; *see also Smith v. Windstar Fin., Inc.*, No. 14–98–00589–CV, 1999 WL 740444, at *3 (Tex.App.-Houston [14th Dist.] Sept. 23, 1999, no pet.) (not designated for publication) (concluding that promissory note payable in installments matured on due date of final installment). And, pursuant to section 16.035(e), the four-year limitations period began to run on that date. Tex. Civ. Prac. & Rem.Code § 16.035(e).

█ Furthermore, any payments made by Spears after January 1, 2000 had no effect on the accrual of CA Partners's cause of action. Essentially, CA Partners argues that the acceptance of payments by its predecessor-in-interest after the date the final installment was due had the effect of restoring the Note to its "original terms." By "original terms," CA Partners means that the Note merely required Spears to make monthly payments on the Note so long as the holder continued to accept them and until he made 120 total payments or paid the remaining balance. In other words, CA Partners would have this Court construe the Note as having no fixed maturity date, or one that is contingent upon the good will of the holder. This conception of the Note's terms ignores the plain language of the Deed, which required Spears to make "120 equal *successive* monthly installments of $217.25 each, *except the final installment, which shall be the balance then due on the Note.*"[9] The Note—by its express terms—

---

or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment.
Tex. Civ. Prac. & Rem.Code § 16.035(e).

9. The general rule is that separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument,

and are to be read and construed together. *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex.1981). Here, the Note and the Deed were both executed on December 4, 1989, for the purpose of securing a loan for remodeling work to be done to Spears's home. Thus, we construe the Note and the Deed together as a single instrument. *See id.; see also The Cadle Co.v. Butler*, 951 S.W.2d 901, 908–09 (Tex.App.-Corpus Christi 1997, no writ) (construing

matured on the due date of the final installment, which was January 1, 2000.

Moreover, the cases cited by CA Partners in its brief involve notes whose maturity dates were accelerated, either by the holder of the note, or by the occurrence of an express condition specified in the note. *See Holy Cross Church of God in Christ*, 44 S.W.3d at 567 (holder accelerated maturity date of note); *San Antonio Real–Estate, Bldg. & Loan Ass'n v. Stewart*, 94 Tex. 441, 61 S.W. 386, 388 (1901) (borrower's default on three installments had effect of accelerating maturity date of note). In fact, CA Partners's argument makes sense only in the context of acceleration. Acceptance of late payments can restore a note to its "original terms," i.e., restore the note's maturity date, which, by statute, is the due date of the final installment. *See* TEX. CIV. PRAC. & REM.CODE § 16.035(e). However, here the parties concede that neither CA Partners nor its predecessors-in-interest accelerated the maturity date of the Note. The final installment on the Note was already overdue—and therefore the Note had matured—by the time CA Partners acquired its interest in the Note. Thus, the four-year limitations period began to run before CA Partners even acquired any interest in the Note. Acceptance of late payments by CA Partners's predecessor-in-interest could not "restore" a maturity date that had already passed.

■ Finally, any payments accepted by CA Partners's predecessors-in-interest after January 1, 2000 did not toll the running of limitations. Partial payment on a promissory note neither interrupts the running of limitations, nor constitutes an acknowledgment of the debt. *Gabriel v. Alhabbal*, 618 S.W.2d 894, 897 (Tex.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.).

And, even if CA Partners were to claim that any of Spears's payments constituted an acknowledgment of the debt—which it does not—CA Partners would have had to bring suit on the acknowledgment and not on the original debt in order to avoid the limitations bar. *See Eldridge v. Collard*, 834 S.W.2d 87, 89 (Tex.App.-Fort Worth 1992, no writ); *Siegel v. McGavock Drilling Co.*, 530 S.W.2d 894, 896 (Tex.Civ. App.-Amarillo 1975, writ ref'd n.r.e.); *see also Sheffield Capital Corp. v. Konen*, No. A14–94–00157–CV, 1995 WL 128250, at *2 (Tex.App.-Houston [14th Dist.] Mar. 23, 1995, no writ) (not designated for publication).

Therefore, the statute of limitations expired on CA Partners's claim for foreclosure on January 1, 2004, but CA Partners did not file suit until April 2006. The trial court did not err in granting Spears's motion for partial summary judgment on the basis of limitations. We overrule CA Partners's second issue.

**C. The Trial Court Did Not Err in Refusing to Reform the Deed.**

■ Finally, CA Partners contends that the trial court erred in refusing to reform the Deed. CA Partners asserts that Findings of Fact 38 and 39—by which the trial judge found that the Deed did not create a lien on Spears's real property, and that Johnson, individually and doing business as CA Partners, has no lien on Spears's real property—are both incorrect. CA Partners argues that this is a case of mutual mistake, and that reformation of the Deed to state the correct lot number for Spears's property is warranted. *See Long Bell Lumber Co. v. Lowry*, 31 S.W.2d 345, 348 (Tex.Civ.App.-Amarillo 1930, no writ) ("Not only are the grantor and grant-

promissory note and deed of trust as a single instrument to determine date of maturity; both documents "were executed on the same date by identical parties," "identif[ied] the same subject matter," and were therefore "not separable").

ee entitled to a reformation of the instrument in case of mutual mistake, but those acquiring the rights of the original parties are entitled to such relief."). CA Partners further asserts that, even if limitations has run on its foreclosure claim, the limitations bar only affects the remedy, and does not destroy the debt. *See Cent. Nat'l Bank v. Latham & Co.*, 22 S.W.2d 765, 768 (Tex. Civ.App.-Waco 1929, writ ref'd) (explaining that a limitations bar affects the remedy only, and does not destroy the debt). According to CA Partners, a moral obligation to pay the debt would survive, allowing it to seek judicial reformation of the Deed, notwithstanding the running of limitations.

Spears contends that its lien and the power of sale to enforce the lien are now void, because the limitations period expired before CA Partners filed suit. He asserts that the law does not require a futile act, and argues that reformation of the Deed would be futile because CA Partners's lien is void. We agree with Spears.

Even if we assume that the trial court erred in finding that the Deed created no lien on Spears's real property—a question we are not required to decide—we would still conclude that the trial court properly refused to reform the Deed. CA Partners's lien is void and it has no power of sale to enforce the lien. *See* TEX. CIV. PRAC. & REM.CODE § 16.035(d). It would be an exercise in futility to reform a document creating a lien on real property when the lien is void and no power of sale to enforce it remains. The law does not require a futile act. *See City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex.1987) (stating the equitable maxim that "a court should not require the doing of a useless thing").

The cases cited by CA Partners do not support its position. *See Woodside Assurance, Inc. v. N.K. Res., Inc.*, 175 S.W.3d 421, 426 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *Latham*, 22 S.W.2d at 768. Section 16.035(b),[10] *Woodside Assurance, Inc.*, and *Latham* make it clear that, while repayment of Spears's debt may remain a moral obligation, under the facts of this case there is no legal remedy for its enforcement. *See* TEX. CIV. PRAC. & REM.CODE § 16.035(b); *Woodside Assurance, Inc.*, 175 S.W.3d at 426 (citing *Machac v. Hajek*, 437 S.W.2d 325, 328 (Tex.Civ.App.-Corpus Christi 1968, writ ref'd n.r.e.)); *Latham*, 22 S.W.2d at 767–68 (explaining the meaning of the terms "pledged property" in the context of the limitations bar). We therefore overrule CA Partners's third issue.

## II. The Trial Court Did Not Err in Awarding Mental Anguish Damages to Spears, and in Issuing Permanent Injunctions Against Johnson.

In its fourth and sixth issues, CA Partners contends that the trial court erred in granting Spears's counterclaims for violations of the DTPA, the Fair Debt Collection Practices Act, and the Texas Finance Code because (1) the evidence showed that any violation was unintentional and the result of bona fide error; (2) there was no evidence or insufficient evidence of a "knowing" violation to support the award of additional damages under the DTPA; and (3) there was insufficient evidence to support the award of mental anguish damages under the DTPA. In its fifth issue, CA Partners argues that the trial court erred in awarding judgment against Johnson individually, and in issuing permanent injunctions against Johnson. We first examine CA Partners's arguments regarding

---

**10.** Section 16.035(b) provides, "A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM.CODE § 16.035(b).

Johnson's individual liability, and then turn to its remaining arguments.

## A. The Trial Court Did Not Err in Awarding Judgment Against Johnson Individually.

 CA Partners first argues that the trial court erred in awarding judgment against Johnson individually because (1) there was no pleading by Spears asking for a judgment individually; and (2) there was no basis for the trial court granting Spears's requested trial amendment to add Johnson as a party over its objection. CA Partners concedes that it is a sole proprietorship, but nonetheless argues that "[t]here was simply no basis for adding Johnson as a party to this action." We disagree.

### 1. Spears Complied With Texas Rule of Civil Procedure 28 by Requesting a Trial Amendment.

 Rule 28 of the Texas Rules of Civil Procedure governs suits against individuals doing business under an assumed name.[11] Rule 28 expressly provides that (1) an individual doing business under an assumed name may be sued in his assumed name for the purpose of enforcing against him a substantive right; and (2) on the motion of any party or on the court's own motion, the true name may be substituted. *See* Tex.R. Civ. P. 28. However, while Rule 28 requires that the correct legal name be substituted, it does not mandate the procedural method by which substitution may be accomplished. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 53 (Tex.2003). The Texas Supreme Court has held that, for the purposes of Rule 28, the correct legal name may be substituted by filing either a motion requesting substitution, or a pleading that substitutes the

correct legal name for the assumed name. *See id.* The party seeking to substitute the party's correct name must do so "at some point before judgment." *See Chilkewitz v. Hyson*, 22 S.W.3d 825, 829 (Tex. 1999); *Sixth RMA Partners*, 111 S.W.3d at 53.

 Whether Johnson used the name CA Partners as an assumed name when collecting debts was a question of fact for the trial court. *See id.* In Finding of Fact 14, the court found that "C.A. Partners ... is an assumed name of Randall B. Johnson." In an appeal following a bench trial, the trial court's findings of fact have the same weight as a jury verdict; we thus review the legal and factual sufficiency of the evidence as we would following a verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). If there is more than a mere scintilla of evidence supporting a finding of fact, we will overrule a legal sufficiency challenge. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). In reviewing a factual sufficiency challenge, we consider all of the evidence and set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996).

At trial, Johnson testified that CA Partners is a sole proprietorship, that he is its sole owner, and that he is in the business of buying, selling, and collecting bad debt. This evidence is legally and factually sufficient to support the trial court's finding that Johnson used the name CA Partners as an assumed name when collecting debts. *See Formosa Plastics Corp.*, 960 S.W.2d at 48; *Ortiz*, 917 S.W.2d at 772. Thus,

---

11. An "assumed name" is a word or phrase by which a person may be made known to the public, and is not a legal entity. *Indus. Acci-*

*dent Bd. v. Tex. Workmen's Comp. Assigned Risk Pool*, 490 S.W.2d 956, 959 (Tex.Civ.App.-Austin 1973, no writ).

Spears could properly substitute the correct legal name by filing either a motion requesting substitution, or a pleading substituting Johnson's name for the assumed name "CA Partners." *See* TEX.R. CIV. P. 28; *Sixth RMA Partners*, 111 S.W.3d at 53. Spears did so by requesting a trial amendment to add Johnson in his individual capacity.

We next examine whether the trial court properly granted Spears's requested trial amendment.

### 2. The Trial Court Properly Granted Spears's Requested Trial Amendment.

Rule 66 of the Texas Rules of Civil Procedure governs trial amendments. Rule 66 provides that, if during trial any defect, fault, or omission in a pleading is called to the attention of the court, the court may allow the pleadings to be amended, and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. TEX.R. CIV. P. 66. A court may not refuse a trial amendment unless (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face. *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.1994). The burden of showing surprise or prejudice rests on the party resisting the amendment. *Id.* If the trial amendment is not mandatory, then the decision to permit the amendment rests within the trial court's sound discretion. TEX.R. CIV. P. 66; *Kilpatrick*, 874 S.W.2d at 658. In such a case, the court's

decision to allow the trial amendment may be reversed only if it is a clear abuse of discretion. *Kilpatrick*, 874 S.W.2d at 658.

Under Texas law, a sole proprietorship has no separate legal existence apart from the sole proprietor. *CU Lloyd's of Tex.*, 126 S.W.3d at 684 (citing *Ideal Lease Serv., Inc.*, 662 S.W.2d at 952). The law treats the sole proprietor and the sole proprietorship as one and the same person.[12] *See id.*

In this case, the trial amendment requested by Spears was mandatory. As noted above, a trial amendment is mandatory if the opposing party fails to present evidence of surprise or prejudice, and the amendment does not assert a new cause of action or defense. *See Kilpatrick*, 874 S.W.2d at 658. Although CA Partners objected when Spears requested the trial amendment, CA Partners failed to present any evidence of surprise or prejudice. Furthermore, the proposed trial amendment did not assert a new cause of action. Rather, through his requested trial amendment, Spears merely sought to substitute Johnson's true name for his assumed name, as Spears was required to do under Rule 28.

Thus, the trial court did not err in granting Spears's requested trial amendment and awarding judgment against Johnson individually. We overrule CA Partners's fifth issue.

### B. The Trial Court Did Not Err in Finding that CA Partners's Violations of the Fair Debt Collection Practices Act and the Texas Finance Code Were Not the Result of Bona Fide Error.

---

**12.** Spears argues that Johnson is not a party to this appeal because he did not file a notice of appeal, and urges us to affirm the judgment as to Johnson individually. However, because the law regards the sole proprietor and the sole proprietorship as one and the same person, Spears's argument is without merit.

■ CA Partners next argues that the trial court erred in granting Spears's counterclaims for violations of the Fair Debt Collection Practices Act and the Texas Finance Code because the evidence showed that any violation was unintentional and the result of bona fide error. CA Partners argues that the evidence showed that CA Partners never seized any of Spears's personal property, and that the Trustee's Deed—which indicated that seizure of Spears's personal property might occur—was the result of bona fide error. CA Partners contends that it is therefore entitled to the bona fide error defense to alleged violations of the Fair Debt Collection Practices Act and the Texas Finance Code. We disagree.

### 1. Applicable Law

■ Section 1692k of the Fair Debt Collection Practices Act and section 392.401 of the Texas Finance Code provide a "bona fide error" defense for debt collectors accused of statutory violations. *See* 15 U.S.C. § 1692k(c); TEX. FIN.CODE § 392.401. Section 1692k provides,

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). Similarly, section 392.401 states that "[a] person does not violate this chapter if the action complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error." TEX. FIN.CODE § 392.401. A "bona fide error" is an error which is made in the course of a good-faith attempt at compliance with statutory requirements. *Callaway v. East Tex. Gov't Credit Union,* 619 S.W.2d 411, 415 (Tex.Civ.App.-Tyler 1981, writ ref'd n.r.e.). However, in order to utilize this defense, the debt collector must show that reasonable procedures were used to prevent the error which caused the violation in question. *See Cent. Adjustment Bureau, Inc. v. Gonzales,* 528 S.W.2d 314, 316 (Tex.Civ.App.-San Antonio 1975, no writ) (interpreting former version of state act); *Johnson v. Riddle,* 443 F.3d 723, 729 (10th Cir.2006) (interpreting federal act). In the absence of such a showing, a debt collector may not successfully assert the bona fide error defense under either the state or the federal act. *See Cent. Adjustment Bureau, Inc.,* 528 S.W.2d at 316; *Johnson,* 443 F.3d at 729.

### 2. Application of Law to the Facts

The trial court found that, by representing in the Trustee's Deed that nonpayment of the debt would result, and did result, in the sale of Spears's personal property, Johnson violated section 1692e(4) of the Fair Debt Collection Practices Act[13] and section 392.304(a)(8) of the Texas Finance Code.[14] CA Partners contends that the

---

13. Section 1692e(4) provides that it is a violation of the Act if the debt collector represents that nonpayment of any debt will result in the unlawful sale of any property of any person. *See* 15 U.S.C. § 1692e(4). Sections 42.001 and 42.002 of the Texas Property Code provide that certain personal property of the debtor is exempt from seizure. *See* TEX. PROP. CODE §§ 42.001 & 42.002. In Finding of Fact 20, the trial court found that any lien on Spears's personal property would have been void under sections 42.001 and 42.002. In

Finding of Fact 22, the trial court found that Johnson violated the state and federal acts by representing in the Trustee's Deed that Spears's nonpayment would result in ·the sale of personal property that could not be lawfully sold.

14. Section 392.304(a)(8) provides that, in debt collection, a debt collector may not use a fraudulent, deceptive, or misleading representation that misrepresents the character, ex-

representation made in the Trustee's Deed regarding the sale of Spears's personal property was the result of bona fide error, thereby attempting to invoke the bona fide error defense.

However, the record contains no evidence that CA Partners instituted reasonable procedures to prevent the error which caused the violations of the Fair Debt Collection Practices Act and the Texas Finance Code. Without any proof that it instituted preventative procedures, CA Partners is not entitled to the protection of the bona fide error defense under either the state or federal acts. The trial court did not err in finding that Johnson's violations were not the result of bona fide error. *See Cent. Adjustment Bureau, Inc.*, 528 S.W.2d at 316; *Johnson*, 443 F.3d at 729. We overrule CA Partners's fourth issue.

**C. There Is Legally and Factually Sufficient Evidence of a "Knowing" Violation to Support the Award of Additional Damages Under the DTPA.**

CA Partners also challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that Johnson knowingly engaged in conduct that violated the DTPA. CA Partners asserts that Spears was never actual-ly evicted from his home, and that none of his personal property was ever removed from his home. CA Partners further asserts that it halted the eviction proceedings to correct the typographical error in the Deed as soon as it was discovered, and that the second notice of default—in which CA Partners represented that Spears contracted with and owed a debt to Western Building and Supply Co.—was a mistake. CA Partners argues that even if it violated the DTPA, it did not do so "knowingly," and the award of additional damages was therefore improper.[15] Again, we disagree.

**1. Standard of Review and Applicable Law**

We have already set forth the standard that applies to appellate review of the trial court's findings of fact. *See Catalina*, 881 S.W.2d at 297. We will sustain a legal sufficiency challenge if there is no more than a mere scintilla of evidence supporting a finding of fact. *See Formosa Plastics Corp.*, 960 S.W.2d at 48. We will sustain a factual sufficiency challenge only if a finding of fact is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Ortiz*, 917 S.W.2d at 772.

The DTPA provides for the award of additional damages for statutory

---

tent, or amount of a consumer debt. *See* Tex. Fin.Code § 392.304(a)(8).

**15.** In a footnote, CA Partners further contends that the trial court erred in "trebling" the $25,000 mental anguish damages because (1) the trial court only found a "knowing" violation; (2) the DTPA states that only *economic* damages are trebled for "knowing" violations; and (3) mental anguish damages are not "economic damages." However, the DTPA allows for the trebling of mental anguish damages for a "knowing" violation when "the claimant is granted the right to bring a cause of action under [the DTPA] by another law...." *See* Tex. Bus. & Com.Code § 17.50(h) (explaining that, if another law grants the right to bring a cause of action under the DTPA, claimants may recover *actual* damages "without regard to whether the conduct of the defendant was committed intentionally," and authorizing the trier of fact to award a total of not more than three times actual damages "[i]n applying Subsection (b)(1) to an award of damages under this subsection"). The Texas Finance Code provides that "[a] violation of this chapter is actionable under [the DTPA]." *See* Tex. Fin. Code § 392.404(a). Thus, because CA Partners's actions constituted a violation of the Texas Finance Code, the trial court was warranted in doubling Spears's mental anguish damages for a mere "knowing" violation of the DTPA. *See id.*

violations that are committed "knowingly." *See* Tex. Bus. & Com.Code § 17.50(b)(1). The DTPA defines "knowingly" as "actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim ... but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." *Id.* § 17.45(9). Actual awareness does not mean merely that a person knows what he is doing. *Daugherty v. Jacobs,* 187 S.W.3d 607, 618 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (citing *St. Paul Surplus Lines Ins. Co. v. Dal–Worth Tank Co.,* 974 S.W.2d 51, 53–54 (Tex.1998)). Rather, it means that a person knows what he is doing is false, deceptive, or unfair. *Id.* (citing *St. Paul Surplus Lines Ins. Co.,* 974 S.W.2d at 54). Actual awareness is more than conscious indifference to another's rights or welfare. *Id.* (citing *St. Paul Surplus Lines Ins. Co.,* 974 S.W.2d at 54). The burden is on the plaintiff to prove that the defendant acted knowingly. *See Bossier Chrysler–Dodge II, Inc. v. Riley,* 221 S.W.3d 749, 758 (Tex.App.-Waco 2007, pet. denied).

### 2. Application of Law to the Facts

The trial court's Findings of Fact related to Johnson's alleged DTPA violations are as follows:

18. The Substitute Trustee Deed executed by Randall B. Johnson purported to sell not only Marshall Spears's real property, but also all personal property located on the premises located at 7314 Nightingale Texas City, Texas 77591. This would, per force, include items of personal property that are exempt under §§ 42.001 and 42.002, Tex. Prop.Code.

19. There was no lien on "all personal property" or even on any personal property located at 7314 Nightingale Texas City, Texas 77591. No such lien is mentioned in the original deed of trust that Randall B. Johnson claims to be the assignee of.

20. Any such lien would have been void under §§ 42.001 and 42.002, Tex. Prop.Code. Randall B. Johnson is charged, as a matter of law, with knowledge of the exemptions granted by such statutes.

21. By purporting to convey the personal property located on the premises at 7314 Nightingale Texas City, Texas 77591, Randall B. Johnson claimed that the agreement conferred or involved rights, remedies or obligations that it did not have or involve or that are prohibited by law. This was a violation of § 17.46(b)(12), Tex. Bus. & Com. Code.

22. By the Trustee's Deed, Randall B. Johnson represented that the nonpayment of the debt would result, and did result in the sale of property that could not be lawfully sold. This was a violation of 15 U.S.C. § 1692e(4) and § 392.304(a)(8), Tex. Fin.Code.

31. Acting through his attorneys, Randall B. Johnson demanded that Marshall Spears pay $14,760.05. That letter misrepresented the character, legal status, and amount of the debt.

32. Also acting through his attorneys, Randall B. Johnson also demanded Marshall Spears pay $15,013.04 on a debt on which Marshall Spears had no liability. That letter misrepresented the character, legal status, and amount of the debt.

33. The actions of Randall B. Johnson were not the result of any bona fide error.

34. The actions of Randall B. Johnson were committed knowingly.

36. Randall Johnson's violations of the Texas Finance Code are also violations of the Texas Deceptive Trade Practices Act.

37. As Randall Johnson's conduct was committed knowingly, Marshall Spears should recover judgment against Randall B. Johnson, individually and doing business as CA Partners, for the sum of $55,000.00 as additional damages under the Texas Deceptive Trade Practices Act. This sum represents twice the mental anguish damages of $25,000 plus twice the attorney's fees of $2,500 paid in connection with the appeal of the forcible entry and detainer judgment.

CA Partners specifically challenges findings 18–22 and 32–36, arguing that any representations in the Trustee's Deed relating to Spears's personal property were not made knowingly, and the notice of default that stated that Spears owed a debt for which he had no liability was a mistake.

However, the following evidence supported the above findings:

- Johnson is "in the business of buying, selling and collecting bad debt," and has been in the business for thirteen years.
- The business of CA Partners is "[n]ot a hundred percent, but largely" collecting debts that are assigned to it, and that other than buying, selling, and collecting debts, CA Partners is not engaged in any other business.
- Johnson was the substitute trustee, he executed the Trustee's Deed, which purported to convey the personal property, and conducted the foreclosure sale of Spears's real property.

- In the Trustee's Deed, Johnson represented that the Deed created a lien on any and all of Spears's personal property located at 7314 Nightingale, Texas City, TX, 77591, and that Spears' interest in this personal property was now conveyed to CA Partners through the foreclosure sale.

- Contrary to Johnson's representation in the Trustee's Deed, the Deed did not create a lien on any of Spears's personal property.

- Johnson sent a second notice of default to Spears representing that Spears owed $15.013.04 to CA Partners as a result of nonpayment of a debt that originated from the "Contract for Labor and Materials and Trust Deed" Spears executed with Western Building and Supply Co.

- Spears never executed a "Contract for Labor and Materials and Trust Deed" with Western Building and Supply Co., and Johnson knew this, yet a letter was sent to Spears demanding payment for this debt.

Thus, the record contains some evidence that Johnson knowingly engaged in conduct that violated the DTPA. Johnson's own testimony establishes that he was engaged in the business of debt collection for thirteen years, and that, with respect to Spears's debt, he (1) represented in the Trustee's Deed that the Deed created a lien on Spears's personal property (which it did not); and (2) represented that Spears owed a debt that originated from a contract executed with Western Building and Supply Co. (which he did not). A reasonable fact finder could infer from this testimony that Johnson made these representations with "actual awareness" that these representations were false. *See* TEX.

Bus. & Com.Code § 17.45(9) ("actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness"); *see also Bossier Chrysler–Dodge II*, 221 S.W.3d at 758 (finding evidence legally sufficient to support jury's finding that defendant knowingly engaged in conduct that violated DTPA; evidence indicated that defendant "engaged in countless transactions of a similar nature on a daily basis," and supported inference that defendant made misrepresentations to plaintiff and failed to disclose the falsity of the representations with "actual awareness" of their falsity). Therefore, the evidence is legally sufficient to support the trial court's finding that Johnson knowingly engaged in conduct that violated the DTPA.

With respect to factual sufficiency, the following evidence contradicts that trial court's findings:

- Johnson testified that he did not realize that the Trustee's Deed contained representations regarding Spears's personal property when he filed the document, "and if we did it was a mistake."
- Johnson testified that the second notice of default had two different amounts in it, that the amount of $14,633.91 stated in the body of the notice "is not accurate" and "incorrect," that the information at the top of the notice is "accurate," and that the notice "mistakenly" recites that the contract was with Western Building and Supply Co. instead of Lyle Construction Co.

While this evidence does contradict the trial court's findings, we must defer to the fact finder's resolution of this disputed issue. *See Pulley v. Milberger*, 198 S.W.3d 418, 426–27 (Tex.App.-Dallas 2006, pet. denied) (stating that, in a factual sufficiency review, an appellate court will not pass on

the credibility of the witnesses or substitute its judgment for the trier of fact); *see also Precision Homes, Inc. v. Cooper*, 671 S.W.2d 924, 929 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.) (stating that it is the sole province of the trier of fact to judge the credibility and weight to be given the testimony and to resolve conflicts in the testimony of the witnesses). We cannot say that the trial court's finding that Johnson knowingly engaged in conduct that violated the DTPA is so against the great weight and preponderance of the evidence as to be manifestly unjust.

Furthermore, CA Partners's contentions have no bearing on the question of whether Johnson knowingly engaged in conduct that violated the DTPA. The fact that Spears was never actually evicted from his home or that none of his personal property was ever removed from his home is irrelevant to the question of whether Johnson knowingly made the representations at issue in either the Trustee's Deed or in the notices of default. And, even if we were to accept CA Partners's argument that it halted the eviction proceedings to correct the typographical error in the Deed as soon as it was discovered, this does not demonstrate that the representations in the Trustee's Deed or in the notices of default were not made knowingly. Moreover, regardless of whether Johnson "admitted" or testified that the second notice of default—in which CA Partners represented that Spears contracted with and owed a debt to Western Building and Supply Co.—was a mistake, as the trier of fact, the trial court was free to disbelieve any or all of Johnson's testimony. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986); *see also Tagle v. Galvan*, 155 S.W.3d 510, 518 (Tex.App.-San Antonio 2004, no pet.).

Thus, there is legally and factually sufficient evidence supporting the trial court's

finding that Johnson knowingly engaged in conduct that violated the DTPA. We next examine the sufficiency of the evidence supporting the trial court's award of mental anguish damages to Spears.

### D. The Evidence Is Legally and Factually Sufficient to Support the Award of Mental Anguish Damages Under the DTPA.

██ CA Partners further contends that the trial court erred in awarding mental anguish damages to Spears. CA Partners challenges Finding of Fact 29, wherein the trial court found that Johnson's actions in foreclosing on Spears's real and personal property and in bringing the forcible entry and detainer action were calculated to and did cause Spears to suffer mental anguish, and that this mental anguish continued until the forcible entry and detainer were dismissed on appeal. CA Partners asserts that Spears's testimony—the only evidence of mental anguish damages he presented at trial—showed "mere worry, anxiety, vexation, embarrassment, or anger," and did nothing but cite the existence of "mere emotions." CA Partners argues that the evidence is therefore both legally and factually insufficient to support the award of mental anguish damages under the DTPA.

Because we find that the evidence presented at trial addressed the nature, duration, and severity of Spears's mental anguish, thus establishing a substantial disruption in his daily routine, we conclude that the evidence is legally and factually sufficient to support the award of mental anguish damages under the DTPA. *See Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995).

### 1. Standard of Review and Applicable Law

As explained above, we will sustain a legal sufficiency challenge if there is no more than a mere scintilla of evidence supporting a finding of fact. *See Formosa Plastics Corp.,* 960 S.W.2d at 48. We will sustain a factual sufficiency challenge only if a finding of fact is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Ortiz,* 917 S.W.2d at 772.

██ A plaintiff who establishes that the defendant knowingly engaged in conduct that violated the DTPA may recover damages for mental anguish. *See* Tex. Bus. & Com.Code § 17.50(b)(1). However, to obtain mental anguish damages under the DTPA, the plaintiff must either (1) introduce direct evidence of the nature, duration, and severity of his mental anguish, establishing a substantial disruption in his daily routine; or (2) present evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. *See Parkway,* 901 S.W.2d at 444. Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded. *Saenz v. Fid. & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996).

Texas courts, including this Court, have held that evidence of a claimant's physical and emotional state, coupled with his/her inability to eat and sleep, constitutes legally and factually sufficient evidence to support the award of mental anguish damages. *See Stevens v. Nat'l Educ. Ctrs., Inc.,* 990 S.W.2d 374, 379 (Tex.App.-Houston [14th Dist.] 1999), *pet. denied,* 11 S.W.3d 185 (Tex.2000) (determining evidence that plaintiff felt "devastated" and depressed, did not eat for a long time, lost weight, and became "very moody" was legally and factually sufficient to support award of mental anguish damages); *Tex. Farmers Ins. Co. v. Cameron,* 24 S.W.3d 386, 395–97 (Tex.App.-Dallas 2000, pet. de-

nied) (concluding evidence that plaintiff, among other things, felt "devastated" going to work, lost her appetite, could not sleep, and took prescription medication for insomnia was legally and factually sufficient to support award of mental anguish damages); *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 617–18 (Tex.App.-Waco 2000, pet. denied) (determining evidence that plaintiff was unable to sleep and suffered from, among other things, vomiting, diarrhea, and depression supported finding of " 'high degree of mental pain and distress,' which caused a serious disruption in his daily routine," and was legally and factually sufficient to support award of mental anguish damages); *Norwest Mortgage, Inc. v. Salinas*, 999 S.W.2d 846, 862–63 (Tex.App.-Corpus Christi 1999, pet. denied) (concluding evidence that plaintiff was unable to sleep, suffered severe stomach cramps, was often unable to eat, and felt "desperate" supported finding that plaintiff suffered " 'a high degree of mental pain and distress' that caused a serious disruption in [her] daily routine" and was legally and factually sufficient to support award of mental anguish damages). Such evidence can take the form of the claimant's own testimony. *Parkway*, 901 S.W.2d at 444.

We have been instructed to "closely scrutinize" awards of mental anguish damages. *Gunn Infiniti v. O'Byrne*, 996 S.W.2d 854, 860 (Tex.1999). With this in mind, we examine the parties' arguments.

**2. Application of Law to the Facts**

CA Partners asserts that Spears's trial testimony only showed "mere worry, anxiety, vexation, embarrassment, or anger," and argues that this evidence is insufficient under the standard adopted by the Texas Supreme Court in *Parkway* to support the award of mental anguish damages. This argument is without merit. At trial, Spears testified that

- He is a 64–year–old retired longshoreman, with a high school education.
- He had worked as a longshoreman from 1968 until he retired in 2004.
- He was devastated when the justice of the peace court granted the forcible entry and detainer suit.[16]
- He was devastated because he was faced with the realization that he didn't have anyplace to go, that he and his son were "going to be put out," and that he only had seven days to figure out how to fight the eviction.
- He was unable to sleep and was "not hardly" able to eat.
- He was unable to sleep and eat because he was thinking about where he was going to live, that he had grown up wishing he had a home of his own, that he had worked for "all these years" to have a home of his own, and suddenly his home was taken by someone he didn't know and from whom he had never borrowed money.
- Thinking these thoughts was devastating to him.
- His thoughts continued—at a minimum—until the forcible entry and detainer was reversed on appeal.
- He was forced to hire a lawyer to appeal the forcible entry and detainer suit to county court, and paid $2,500 in attorney's fees in connection with that appeal.
- He was seeking mental anguish damages "for harassment and the grief and everything [he was] going through."

16. Spears actually testified that he was "demonstrated" as a result of the adverse ruling in the forcible entry and detainer suit. However, on direct examination, Spears later clarified that by "demonstrated," he meant "devastated."

Contrary to CA Partners's contention, Spears's trial testimony is sufficient under *Parkway* to support the award of mental anguish damages under the DTPA. His testimony constitutes "direct evidence of the nature, duration, and severity of [his] mental anguish," and established "a substantial disruption in [his] daily routine." *See Parkway*, 901 S.W.2d at 444. Spears's testimony did more than cite the existence of "mere emotions," as CA Partners contends. We find that the evidence is legally sufficient to support the award of mental anguish damages under the DTPA. *See Stevens*, 990 S.W.2d at 379; *Tex. Farmers Ins. Co.*, 24 S.W.3d at 395–97; *Burleson State Bank*, 27 S.W.3d at 617–18; *Norwest Mortgage, Inc.*, 999 S.W.2d at 862–63.

Furthermore, we find that the above evidence is factually sufficient to support the trial court's award of mental anguish damages. CA Partners has not presented evidence contradicting Spears's testimony regarding his mental anguish. Absent such evidence, Spears's testimony is factually sufficient to support the award of mental anguish damages. *See Stevens*, 990 S.W.2d at 379.

Therefore, the evidence is legally and factually sufficient to support an award of mental anguish damages under the DTPA. We overrule CA Partners's sixth issue.

**E. The Trial Court Did Not Err in Issuing Permanent Injunctions Against Johnson.**

■ Finally, CA Partners contends that the trial court erred in permanently enjoining Johnson from (1) engaging in debt collection until he posts a surety bond with the Secretary of State; and (2) using the name "CA Partners" as an assumed name in debt collection in the State of Texas. CA Partners asserts that Spears never requested permanent injunctions in any of his pleadings, nor did he allege that Johnson violated section 392.101(a) of the Texas Finance Code by not posting a surety bond with the Secretary of State. CA Partners further asserts that Johnson is not a "third-party debt collector" as that term is used in section 392.101(a), that he is not required to post a surety bond, and that he has committed no statutory violation. CA Partners argues that the permanent injunctions issued against Johnson are therefore improper.

**1. Standard of Review and Applicable Law**

■ We review the trial court's grant of permanent injunctions for an abuse of discretion. *See Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 848 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). A trial court abuses its discretion when it acts arbitrarily and unreasonably, or when it misapplies the law to the established facts of the case. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975).

■ Section 392.101 of the Texas Finance Code prohibits a third-party debt collector from engaging in debt collection unless he obtains a $10,000 surety bond and files a copy of the bond with the Secretary of State. *See* TEX. FIN.CODE § 392.101(a)(1), (c). The definition of "third-party debt collector" in the Texas Finance Code tracks the definition of "debt collector" in the Fair Debt Collection Practices Act. *See* TEX. FIN.CODE § 392.001(7) (" 'Third-party debt collector' means a debt collector, as defined by 15 U.S.C. § 1692a(6)"). The Fair Debt Collection Practices Act provides,

The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which

is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a(6). Section 1692a(6) further narrows the meaning of "debt collector" by excluding "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." *See id.* § 1692a(6)(F)(iii). Therefore, "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir.1985). Thus, if a debt is in default at the time the assignee acquires his interest in the debt, he is a "third-party debt collector" within the contemplation of the section 392.101(a) of the Texas Finance Code. *See* TEX. FIN.CODE §§ 392.001(7) & 392.101(a); 15 U.S.C. § 1692a(6)(F)(iii).

### 2. Application of Law to the Facts

The following Findings of Fact relate to the two permanent injunctions issued by the trial court and show that Johnson is a third-party debt collector:

7. Randall B. Johnson collects or attempts to collect debts owed or due that were in default at the time they were obtained by him.

8. Randall B. Johnson's only business is in collection of such debts.

10. Randall B. Johnson is a third-party debt collector as defined by § 392.001, Texas Finance Code and by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6).

11. Randall B. Johnson has not posted a security bond with the Secretary of State as required by the Texas Finance Code, § 392.101. He was,

therefore, prohibited by law from engaging in debt collection in this state.

14. C.A. Partners is not a partnership—it is an assumed name of Randall B. Johnson.

15. Because of the sworn testimony, the sworn documents, and the documents filed in the Real Property Records of Galveston County, Randall B. Johnson is estopped to deny that he has collected debts under other than his true name or true business name.

43. Randall B. Johnson should be permanently enjoined from engaging in debt collection unless and until he shall have obtained a surety bond and posted same with the Secretary of State in accordance with and as required by Tex. Fin. Code § 392.101 and Randall B. Johnson should be permanently enjoined from using the name CA Partners, as an assumed name, in debt collection in this state.

CA Partners only challenges Findings of Fact 10, 11, 14, and 15, asserting that it is not a "third-party debt collector" because it "was collecting its own debt obtained by assignment," and that "there is no evidence that [it] collected debts other than under its true business name of CA Partners."

However, the trial court found—and CA Partners does not dispute—that "Johnson collects or attempts to collect debts owed or due that were in default at the time they were obtained by him." Thus, Johnson is a "third-party debt collector" for the purposes of section 392.101(a) of the Texas Finance Code. *See* TEX. FIN.CODE §§ 392.001(7) & 392.101(a); 15 U.S.C.

§ 1692a(6)(F)(iii); *see also Perry*, 756 F.2d at 1208.[17]

■■■ We turn next to CA Partners's statement, made in passing, that Spears did not plead for an injunction and therefore should not have been granted an injunction. CA Partners's entire argument on this point is the following: "No request for permanent injunction was pleaded by Spears and there was no pleading alleging that [CA Partners] violated this statute by not posting a surety bond." CA Partners cited no case law and no rules of civil procedure in support of this statement. The sole focus of CA Partners's issue regarding the trial court's issuance of permanent injunctions is Johnson's status as a "third-party debt collector" under the Texas Finance Code, and not whether Spears was required to plead for the permanent injunctions that were granted by the trial court. Apart from this single assertion, CA Partners's brief wholly fails to address any pleading requirements related to the issuance of permanent injunctions. We will not develop CA Partners's arguments for it.

Therefore, because CA Partners's brief contains no "clear and concise argument" for its contention that the trial court erred in issuing unpleaded permanent injunctions against Johnson, nor does it contain any citation to authority for this proposition, we hold that CA Partners has waived this argument on appeal. TEX.R.APP. P. 38.1(e), (h); *see CoTemp, Inc. v. Houston W. Corp.*, 222 S.W.3d 487, 495 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (holding

that appellant waived issue on appeal by failing to provide argument or authority to support its assertions).

Moreover, as Spears correctly notes, CA Partners failed to challenge the permanent injunction enjoining Johnson from using the name "CA Partners" as an assumed name while engaged in debt collection in the state of Texas. While CA Partners does allege that "there is no evidence that Appellant collected debts other than under its true business name of CA Partners," it is unclear whether CA Partners even challenges the issuance of this particular permanent injunction. CA Partners's brief does not contain any argument regarding what constitutes "the true name" of an individual or "the true business name" of a sole proprietorship, nor does it explain how the trial court might have abused its discretion in issuing this permanent injunction. Furthermore, CA Partners's brief does not contain any citations to authority supporting what we could construe as a challenge to this permanent injunction. Accordingly, we hold that CA Partners has waived any challenge to this permanent injunction on appeal. TEX.R.APP. P. 38.1(e), (h); *see CoTemp, Inc.*, 222 S.W.3d at 495.

We therefore overrule CA Partners's fifth issue.

### III. The Trial Court Erred in its Award of Attorney's Fees to Spears.

■■■ In its seventh issue, CA Partners contends that the trial court erred in its award of attorney's fees to Spears[18] be-

---

17. Johnson does not claim on appeal that the trial court has no general authority to issue the injunction; he claims that the court had no authority to enjoin him because he is not a third-party debt collector.

18. On appeal, CA Partners failed to challenge the attorney's fees awarded to CitiFinancial, and therefore waived any such challenge. In

its briefing on this issue, CA Partners only challenges the award of attorney's fees to Spears. While CA Partners does mention the award of attorney's fees to CitiFinancial in its eighth issue, CA Partners focuses its argument there on the trial court's alleged error in granting CitiFinancial leave to file a counterclaim during trial, and not whether fee segre-

cause (1) Spears failed to segregate between time incurred on fee-recoverable and non-fee-recoverable matters; and (2) the amount of appellate attorney's fees awarded was "extravagant" and excessive.[19] CA Partners asserts that attorney's fees are not recoverable on all the causes of actions pleaded by Spears in his original counterclaim, and argues that because these causes of action are not "inextricably intertwined," the trial court erred in awarding the total amount requested by Spears for attorney's fees.

Because we agree with CA Partners that Spears was required to segregate fees in this case, we reverse that portion of the judgment awarding attorney's fees to Spears, and remand the cause to the trial court for a new trial on attorney's fees. *See A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex.2007) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex.2006)) (reversing and remanding cause for new trial on attorney's fees).

## A. Standard of Review and Applicable Law

■ As *Chapa* makes clear, the need to segregate attorney's fees is a question of law, while the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *See Chapa*, 212 S.W.3d at 312–13.

■ Generally, a party seeking attorney's fees must segregate fees incurred in connection with a claim that allows their recovery from fees incurred in connection with claims for which no such recovery is allowed. *See 7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 506 (Tex.App.-Houston [14th Dist.] 2007, pet. filed) (citing *Chapa*, 212 S.W.3d at 313–14). This is because trial courts do not have inherent authority to require a losing party to pay the prevailing party's attorney's fees. *Chapa*, 212 S.W.3d at 311. They may only do so under authority of a contract or statute. *See id.*

■ Texas courts recognize an exception to this general rule. *See id.* When discrete legal services advance both recoverable claims and unrecoverable claims, attorneys are not required to segregate fees to recover the total amount covering all claims. *See id.* at 313. In this situation, the claims are said to be "intertwined," and the mere fact that attorney's fees are incurred in advancing both recoverable and unrecoverable claims does not render those fees unrecoverable.[20] *See id.* at 313–14.

gation was required or whether CitiFinancial's fee award was excessive. Therefore, we construe CA Partners's issue as a challenge only to the trial court's award of attorney's fees to Spears.

19. Because we remand the cause to the trial court for a new trial on attorney's fees, we do not reach the argument that the fees were excessive.

20. The former version of this exception applied when two or more claims were "dependent upon the same set of facts or circumstances," and thus "intertwined to the point of being inseparable." *See Chapa*, 212 S.W.3d at 311; *see also Stewart Title Guar.*

*Co. v. Sterling*, 822 S.W.2d 1, 11–12 (Tex. 1991). In that situation, the claims were said to be "inextricably intertwined," and fee segregation was not required. *See Chapa*, 212 S.W.3d at 311; *see also Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 208 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (referencing "inextricably intertwined" exception to the attorney fee segregation requirement). However, in *Chapa*, the Texas Supreme Court explained that common or "intertwined" facts do not make all fees incurred recoverable. *See* 212 S.W.3d at 313–14. Rather, fees are recoverable—and segregation is not required—if the legal work performed "advances both a recoverable and unrecoverable claim." *See id.* This is the

However, if any attorney's fees relate solely to a claim for which attorney's fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. *Id.* at 313. But, even when fee segregation is required, attorneys are not required to keep separate records documenting the exact amount of time pleading one claim versus another. *See id.* at 314. Rather, the evidence of the amount of recoverable attorney's fees is sufficiently segregated if, for example, the attorney testifies that a given percentage of the drafting time would have been necessary even if the claim for which attorney's fees are not recoverable had not been asserted. *7979 Airport Garage,* 245 S.W.3d at 506. The party seeking to recover attorney's fees carries the burden of demonstrating that fee segregation is not required. *See Hong Kong Dev., Inc. v. Nguyen,* 229 S.W.3d 415, 455 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

With this in mind, we examine the parties' arguments.

### B. Application of Law to the Facts

In this case, the trial court's attorney's fee award was based on evidence of unsegregated fees. Spears argues that fee segregation is not required because (1) his claim "to remove cloud upon title" is "actually just a request for a declaratory judgment that [CA Partners] had no lien upon [Spears's] property"; (2) he presented no evidence, did no discovery, and sought no recovery on his tortious interference claim; and (3) the causes of action pleaded in his counterclaim are "inextricably intertwined" with his defense to CA Partners's suit for reformation of the Deed and judicial foreclosure. We disagree with Spears that fee segregation is not required in this case, and address each of his arguments in turn.

Spears's initial argument—that we should construe his claim "to remove cloud upon title" as a mere request for a declaratory judgment—is without merit. Even liberally construing Spears's pleadings, we conclude that (1) Spears's request for declaratory judgment was actually pleaded earlier in his counterclaim; and (2) Spears's claim "to remove cloud upon title" is a tort claim for damages rather than a request for declaratory judgment.

The relevant paragraphs of Spears's counterclaim are as follows:

#### Third Cause of Action—Declaratory Judgment

14. Spears sues CAP for a declaratory judgment that the Deed of Trust did not provide a lien on his personal property located on his property and that is not affixed to or a fixture of the property. Spears also sues for a declaratory judgment that the debt and lien are barred by the statute of limitations. Spears sues for reasonable attorney's fee[s] for having to bring this declaratory judgment action.

#### Fourth Cause of Action—Slander of Title—Suit to Remove Cloud on Title

15. By claiming that it should have a lien on Spears's property, CAP has slandered the title of Spears and has created a cloud on the title to his property. Spears sues CAP to remove same. Spears sues for damages, and reasonable attorney's fees for having to bring this action.

From the foregoing, it is immediately apparent that Spears counterclaimed for a declaratory judgment that CA Partners

---

focus of the current version of the exception. *See id.; see also 7979 Airport Garage,* 245

S.W.3d at 506.

had no lien upon Spears's property, but did so in the paragraph preceding his "Suit to Remove Cloud on Title" claim. The express language used in paragraph 14 demonstrates that Spears obviously knew how to request a declaratory judgment, and the absence of similar language in paragraph 15 indicates that Spears sought a different form of relief through the latter cause of action.

▓▓▓▓ Furthermore, in terms of the relief requested, Spears expressly sought to recover damages for his "Slander of Title—Suit to Remove Cloud on Title" claim. Damages are not recoverable in a suit to remove cloud on title. *See Pampell Interests, Inc. v. Wolle*, 797 S.W.2d 392, 395 (Tex.App.-Austin 1990, no writ) (explaining that a suit to remove cloud on title "is an equitable action for which damages are not available"). However, damages are recoverable in a suit for slander of title. *See id.* (explaining that a suit for "slander of title" is a tort action for which damages are recoverable). Therefore, because Spears expressly sought damages for his "Slander of Title—Suit to Remove Cloud on Title" claim, and because Spears failed to request declaratory relief—as he had done elsewhere in his pleadings—we will not construe his tort claim as a request for a declaratory judgment.

▓▓▓ Next, Spears's argument that he presented no evidence, did no discovery, and sought no recovery on his tortious interference claim has no basis in the record. Quite the contrary, the record suggests that Spears did not abandon this claim before trial commenced. In fact, when Spears's attorney was cross-examined regarding fee segregation, she stated that the five causes of action pleaded in Spears's counterclaim "are all so intertwined that a recovery of attorney's fees under any of those causes of action is not required to be segregated." Significantly,

she never testified that no legal work was performed in connection with Spears's tortious interference claim, or that he sought no recovery on this claim. Nor did she explain Spears's failure to amend his original counterclaim to delete this cause of action. And, while her testimony arguably advanced Spears's position that fee segregation was not required, Spears's attorney failed to articulate how the legal services that she performed advanced both recoverable and unrecoverable claims, as *Chapa* requires. *See Chapa*, 212 S.W.3d at 313–14.

▓▓▓ Finally, with respect to Spears's argument that the five causes of action pleaded in his counterclaim are "inextricably intertwined," we note that the Texas Supreme Court has expressly held that "[i]ntertwined *facts* do not make tort fees recoverable." *See id.* at 313 (emphasis added). Rather, the determination focuses solely on whether the legal work performed pertains solely to claims for which attorney's fees are not recoverable. *7979 Airport Garage*, 245 S.W.3d at 509. In making this determination, fact finders do not examine the work product as a whole, but parse the work into component tasks. *Id.* (citing *Chapa*, 212 S.W.3d at 313).

Defense of CA Partners's suit to reform the Deed and for judicial foreclosure did not require Spears to prevail on his counterclaims for tortious interference or slander of title. *Cf. Chapa*, 212 S.W.3d at 314 ("to prevail on a contract claim a party must overcome any and all affirmative defenses (such as limitations, res judicata, or prior material breach), and the opposing party who raises them should not be allowed to suggest to the jury that overcoming those defenses was unnecessary"). Nor did Spears's request for declaratory judgment require him to prevail on these two counterclaims. In fact, Spears suc-

cessfully defended CA Partners's declaratory judgment action and prevailed on his own request for a declaratory judgment without prevailing on either his tortious interference or slander of title claims.

Furthermore, while development of some of the facts may have been the same among Spears's counterclaims, and while the evidence presented may have pertained to all the claims and counterclaims in the case, it is immediately apparent that each of his counterclaims required, at a minimum, drafting separate portions of his pleading. Each counterclaim also required separate legal research, and possibly separate discovery requests as well. The attorney's fees relating solely to the prosecution of Spears's tortious interference and slander of title claims and hence, to drafting this language, are not recoverable. *See 7979 Airport Garage,* 245 S.W.3d at 509. Although Spears's original counterclaim contains less than a dozen sentences related solely to these claims, " 'unrecoverable fees [are not] rendered recoverable merely because they are nominal. . . .' " *Id.* at 510 (quoting *Chapa,* 212 S.W.3d at 313).

Because it is beyond dispute that some of his attorney's fees are · related solely to the work performed on claims for *tortious interference and slander of title,* Spears was required to segregate fees. *See id.* at 313–14. However, Spears did not forfeit his right to recover attorney's fees by failing to segregate them. *See id.* at 314; *7979 Airport Garage,* 245 S.W.3d at 510. The evidence he presented regarding the total amount of attorney's fees he incurred is some evidence of what the segregated amount should be. *See Chapa,* 212 S.W.3d at 314; *7979 Airport Garage,* 245 S.W.3d at 510. Therefore, we sustain CA Partners's seventh issue, sever and

reverse that portion of the judgment awarding attorney's fees to Spears, and remand the cause to the trial court for a new trial on Spears's recoverable attorney's fees.[21]

## IV. The Trial Court Did Not Err in Allowing CitiFinancial to File a Counterclaim During Trial.

In its final issue, CA Partners contends that the trial court erred in allowing CitiFinancial to file a counterclaim in the middle of trial because (1) the issue of CitiFinancial's lien position was not tried by consent; and (2) there was no claim for affirmative relief asserted against CitiFinancial. CA Partners argues that CitiFinancial presented no evidence in support of its counterclaim during trial, and therefore the issue of CitiFinancial's lien priority "was not tried by consent, and in fact, was not tried at all." CA Partners further asserts that CitiFinancial was only made a party to the declaratory judgment suit because it had a lien on the property at issue. And, despite paragraph 4.7 in its first amended petition—which states "Reformation of this lien is superior to any other lien on the Property"—CA Partners argues that the issue of priority of liens was not discussed in its pleadings, and that "there was no request for affirmative relief against CitiFinancial." CA Partners contends that the trial court therefore erred in granting CitiFinancial a judgment and award of attorney's fees on its counterclaim.

We agree with CitiFinancial that the filing of its counterclaim during trial could not have operated as a surprise to CA Partners. We hold that the trial court did not abuse its discretion in granting CitiFinancial leave to file a counterclaim

---

21. As we have already explained, as a result of our disposition of this issue, we do not reach the question of whether Spears's appellate attorney's fee award is excessive.

during trial, and overrule CA Partners's final issue.[22]

### A. Standard of Review and Applicable Law

Rule 63 of the Texas Rules of Civil Procedure governs the trial court's grant of leave to file a counterclaim during trial. *See* Tex.R. Civ. P. 63. Rule 63 states that

Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses, or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, *which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.*

*Id.* (emphasis added). Therefore, under Rule 63, the trial court is required to grant leave to file a counterclaim unless the opposing party demonstrates that the filing of the counterclaim will operate as a surprise to that party. *See id.*

■■■■ We review the trial court's grant of leave to file a counterclaim during trial for an abuse of discretion. *See Hardin v. Hardin,* 597 S.W.2d 347, 349–50 (Tex.1980). A trial court abuses its discretion in granting leave to file a counterclaim during trial when the opposing party presents evidence of surprise. *See* Tex.R. Civ. P. 63; *Hardin,* 597 S.W.2d at 349–50. We now examine the parties' arguments.

### B. Application of Law to the Facts

Not only did the trial court not abuse its discretion in granting CitiFinancial leave to file its counterclaim, it would have been an abuse of discretion if the trial court had refused CitiFinancial's request for leave to file its counterclaim. Under Rule 63, the trial court has no discretion to deny a party leave to file a counterclaim unless the opposing party presents evidence of surprise. *See* Tex.R. Civ. P. 63; *Hardin,* 597 S.W.2d at 349–50. Here, CA Partners failed to meet its burden.

On the issue of surprise, CA Partners alleges that its pleadings neither discuss the issue of CitiFinancial's lien priority, nor assert any request for affirmative relief against CitiFinancial. However, CA Partner's first amended petition—its live pleading in the trial court—demonstrates otherwise:

- Paragraph 3.3 references CitiFinancial's October 17, 2002 loan to Spears and its "second lien" on Spears's real property. This paragraph further states that CitiFinancial extended this loan on October 14, 2004.
- Paragraph 4.7 of CA Partners's first amended petition states that "Reformation of this lien is superior to any other lien on the Property."
- Paragraph 4.9 contains CA Partners's request for judicial foreclosure of Spears's real property subject to the reformed Deed.

In asserting that CitiFinancial held a "second lien" on Spears's real property, and stating that its own lien "is superior to any other lien" on that property, CA Partners cannot here contend that the filing of CitiFinancial's counterclaim—in which it requested a declaratory judgment that its lien was superior to any held by CA Partners—operated as a surprise. CitiFinan-

---

22. In light of our resolution of this issue, we do not address CitiFinancial's contention that the issue of its lien priority was tried by consent.

cial's counterclaim directly related to CA Partner's petition for declaratory relief, and CA Partners cannot reasonably claim "surprise" when its suit directly attacked CitiFinancial's lien priority. *See Richards v. Am. Nat'l Prop. & Cas. Co.*, 195 S.W.3d 758, 762 (Tex.App.-Beaumont 2006, no pet) (concluding that, for the purposes of Texas Rule of Civil Procedure 252, a plaintiff could not reasonably claim "surprise" when the defendant's counterclaim and affirmative defenses "all directly related to [the plaintiff's] underlying petition for declaratory relief," and the plaintiff's suit directly attacked the defendant's right to receive payment under its lien). Therefore, the trial court did not abuse its discretion in granting CitiFinancial leave to file its counterclaim. We overrule CA Partners's final issue.

## Conclusion

We reverse that portion of the trial court's judgment awarding attorney's fees to Spears, sever that portion of the judgment, and remand the cause to the trial court for a determination of Spears's recoverable attorney's fees in a manner consistent with this opinion. We affirm the trial court's judgment in all other respects.[23]

---

**23.** Due to our resolution of CA Partners's issues on appeal, we need not address Spears's cross-point claiming error in the tri-al court's admission of testimony on CA Partners's attorney's fees.