**Opinion issued May 21, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00608-CV

_____

**CHRISTOPHER L. NGUYEN, THO NGUYEN, AND GIANG NGUYEN,
Appellants**

**V.**

**RODRIGO ORLANDO KULJIS, Appellee**

On Appeal from the County Court at Law No. 3
Galveston County, Texas
Trial Court Case No. 62,501

## O P I N I O N

Rodrigo Orlando Kuljis sued his former landlords Christopher L. Nguyen,

Tho Nguyen, and Giang Nguyen. Kuljis filed two motions for summary judgment,

which the trial court granted. In two issues, the Nguyens argue that the trial court

erred in (1) denying their motion for new trial and (2) granting Kuljis more attorney's fees than he requested in his motion for summary judgment.

We affirm in part, reverse in part, and remand.

## Background

In March 2010, Kuljis filed his original petition against the Nguyens, his former landlords. He alleged that the Nguyens had failed to return his security deposit or provide an accounting of the amounts charged against the deposit as required by the Texas Property Code[1] and had "failed to make repairs or address defects during the lease term, violated [Kuljis's] privacy in an outrageous manner, overcharged for utilities, failed to place the utilities in [Kuljis's] name, and repeatedly ignored [Kuljis's] requests for help in the above areas." Kuljis alleged that, as a result of the Nguyens' breaches of the lease, he "drastically overpaid" for rentals and other charges under the lease. Kuljis sought compensatory damages for breach of the lease, treble damages for the wrongfully withheld deposit, attorney's fees, and costs.[2]

---

[1] *See* TEX. PROP. CODE ANN. § 92.103(a) (West 2007) (providing that landlord has obligation to refund security deposit within thirty days); *id.* § 92.109(b) (West 2007) (providing, among other things, that landlord who in bad faith retains deposit or fails to provide written list of damages and charges against deposit is liable for amount equal to sum of $100, three times portion of deposit wrongfully withheld, and tenant's reasonable attorney's fees).

[2] *See* TEX. PROP. CODE ANN. § 92.109 (West 2007) (providing damages for failure to return deposit or provide accounting).

The Nguyens timely answered the lawsuit and also filed a counterclaim. They asserted that Kuljis's claims were bared by res judicata because a justice of the peace dismissed an earlier suit brought against them by Kuljis. The Nguyens further alleged that they attempted to provide Kuljis with "an itemized list of the items taken from the deposit" and the remainder of the security deposit, but their certified mail was returned. They then sent the check for the remainder of the security deposit to the post office box provided by Kuljis's attorney. According to the Nguyens, Kuljis brought the suit for purposes of harassment—he knew that it was frivolous and that the issues had already been resolved. They counterclaimed for "breach of contract, abuse of process, malicious prosecution," and for "vexatious" litigation.

The Nguyens' attorney withdrew from the lawsuit nine months after it was filed. While the Nguyens were proceeding pro se, Kuljis moved for traditional summary judgment on his claims, including his claims that the Nguyens violated the Property Code and breached the lease. He also separately moved for a no-evidence summary judgment on the Nguyens' counterclaims. The two motions were set for hearing on the same date. Christopher Nguyen filed a pro se response to the no-evidence summary judgment motion, but did not respond to the traditional summary judgment motion. Tho and Giang Nguyen did not file any response to the motions for summary judgment.

Ten days before the summary judgment hearing, Kuljis moved to strike Christopher's summary judgment evidence and filed a reply to Christopher's response, arguing that the response failed to address the arguments raised in the no-evidence motion.

The trial court held a hearing on the motions for summary judgment. There is no court reporter's record of the hearing. Two days after the hearing, the trial court signed a final judgment granting Kuljis's motion to strike Christopher's summary judgment evidence and both of Kuljis's motions for summary judgment. The trial court awarded Kuljis $30,916.34, including $20,157.18 for attorney's fees, against the Nguyens, jointly and severally.

The Nguyens filed a timely motion for a new trial, asking the trial court to set aside the judgment. They argued that their failure to respond to Kuljis's traditional motion for summary judgment on his claims for affirmative relief, and Tho's and Giang's failure to respond to Kuljis's no-evidence motion on their counterclaims, was not intentional or due to conscious indifference, but due to accident or mistake. They further asserted that they had a meritorious defense and that Kuljis would not suffer any undue prejudice if the judgment was set aside. The Nguyens also argued that the trial court erred in awarding Kuljis more attorney's fees than he requested and that the amount awarded was not reasonable or necessary.

4

The Nguyens' motion for new trial was accompanied by the affidavits of each of the Nguyens. In his affidavit, Christopher stated that he mistakenly believed that his no-evidence summary judgment response was an adequate response to both motions for summary judgment on behalf of all of the Nguyens. Christopher further averred that Kuljis had given the wrong address for returning the deposit, making the Nguyens' attempt to return the deposit by certified mail unsuccessful. Christopher attached the return receipt showing the envelope was undeliverable. Christopher also stated that he had previously attempted to return the deposit to Kuljis's attorney, who refused to accept it. Finally, Christopher averred that he was prepared to refund the deposit immediately and would reimburse Kuljis for the reasonable expenses Kuljis had incurred in obtaining the judgment. Tho and Giang filed affidavits containing similar statements. The Nguyens also attached their attorney's affidavit on the issue of reasonable and necessary attorney's fees.

The trial court conducted an oral hearing on the motion, but there is no court reporter's record of the hearing. The trial court denied the motion for new trial, and this appeal followed.

**Motion for New Trial**

In their first issue, the Nguyens contend that the trial court erred in denying their motion for new trial. Specifically, the Nguyens argue that they were entitled

5

to a new trial under *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939), because they established that their failure to respond adequately to the summary judgment motions was a mistake, that they had a meritorious defense, and that Kuljis would not be prejudiced.

## A.    Standard of review

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

## B.    Application of *Craddock* and similar tests to summary judgments

In *Craddock*, the Texas Supreme Court held that a default judgment should be set aside when the defendant establishes that (1) the failure to answer was not intentional or the result of conscious indifference, but the result of an accident or mistake; (2) the motion for new trial sets up a meritorious defense; and (3) granting the motion will occasion no undue delay or otherwise injure the plaintiff. *See* 133 S.W.2d at 126. The *Craddock* rule "is based upon equitable principles and 'prevents an injustice to the defendant without working an injustice on the plaintiff.'" *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 685 (Tex. 2002)

(quoting *Craddock*, 133 S.W.3d at 126). The *Craddock* standard was enacted "to alleviate unduly harsh and unjust results at a point in time when the defaulting party has no other remedy available." *Id.* at 686.[3]

The Supreme Court subsequently refused to extend *Craddock* "to a motion for new trial filed after summary judgment is granted on a motion to which the nonmovant failed to timely respond when the respondent had notice of the hearing and an opportunity to employ the means our civil procedure rules make available to alter the deadlines Rule 166a imposes." *Id.* at 683–84. Thus, satisfaction of the three *Craddock* factors does not, without more, confer a party with the right to have a summary judgment set aside when the nonmovant fails to respond. *Id.*; *see also Scott v. Hunt*, No. 01-11-00042-CV, 2012 WL 983339, at *9 (Tex. App.—Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op.) ("*Craddock* does not apply to an appeal from a traditional summary judgment.") (citing *Rabe v. Guar. Nat'l Ins. Co.*, 787 S.W.2d 575, 579 (Tex. App.—Houston [1st Dist.] 1990, writ denied)). The purpose in adopting the *Craddock* standard—"to alleviate unduly harsh and unjust results at a point in time when the defaulting party has no other remedy available"—does not support applying *Craddock* "when our rules provide the defaulting party a remedy." *Carpenter*, 98 S.W.3d at 686. Although the

---

[3]  In *Ivy v. Carrell,* 407 S.W.2d 212, 213 (Tex.1966), the Court extended *Craddock* to post-answer default judgments. The primary issue in this appeal, however, does not concern a post-answer default; it concerns an inadequate response to a no-evidence motion for summary judgment.

*Carpenter* Court noted that a nonmovant who fails to timely respond to a motion for summary judgment may seek a continuance or permission to file a late response, the Court left undecided "whether *Craddock* should apply when a nonmovant discovers its mistake after the summary-judgment hearing or rendition of judgment." *Id.*

The *Carpenter* Court then turned its analysis to "whether the trial court abused its discretion in denying [the nonmovant's] motion for leave to file a late response to Carpenter's motion for summary judgment." *Id.* It held:

> [A] motion for leave to file a late summary-judgment response should be granted when a litigant establishes good cause for failing to timely respond by showing that (1) the failure to respond was not intentional or the result of conscious indifference, but the result of accident or mistake, and (2) allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment.

*Id.* at 687–88.[4] The two prong test is the same test used for withdrawing deemed admissions. *Id.* at 687. In effect, the two-prong *Carpenter* test is the same as the three-prong *Craddock* test with one exception: it is unnecessary for the party seeking leave to file a late response to demonstrate a meritorious defense.

---

[4]    The Court concluded that the nonmovant had not established good cause because the motion for new trial offered no explanation for the nonmovant's failure to respond aside from counsel's "bare assertion" that he had "miscalendared" the hearing, without any supporting affidavits or other evidence. *Carpenter*, 98 S.W.3d at 688.

Subsequently, the Texas Supreme Court applied the *Carpenter* test to reverse a traditional summary judgment when a pro se nonmovant appeared in person but mistakenly failed to file a written summary judgment response. *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005); *see also Marino v. King*, 355 S.W.3d 629, 633 (Tex. 2011) (per curiam) (discussing standard articulated in *Wheeler*). In *Wheeler*, the pro se litigant filed her responses to requests for admission two days late but months before the summary judgment hearing.[5] She attended the summary judgment hearing, but did not file a summary judgment response because she was mistaken about discovery deadlines and the nature of a summary judgment hearing. *Wheeler*, 157 S.W.3d at 442. The only evidence the movant offered in support of summary judgment was the deemed admissions. The trial court granted summary judgment against the pro se litigant, terminating her rights as joint managing conservator of her daughter and appointing the movant as the sole managing conservator. *Id.* The Court reaffirmed the *Carpenter* two-fold standard for withdrawing deemed admissions and for allowing a late summary judgment response. *Id.* The Supreme Court concluded that the pro se litigant had good cause for her late-filed responses, and that once the requests were no longer deemed admitted, she was not required to file a summary judgment response. *Id.* (citing *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999) (holding that

---

[5] Contrary to the dissent's assertion, the responses were not "inadequate." They were untimely.

9

"trial court may not grant summary judgment by default . . . when the movant's summary judgment proof is legally insufficient")). Although the pro se litigant never filed a motion to withdraw her deemed admissions or a late response to the summary judgment motion, the arguments and requests in her motion for new trial were sufficient to put the trial court on notice of exactly that complaint. *Id.* (citing TEX. R. APP. P. 33.1(a)). She also did not waive the arguments by waiting until the new trial motion to present them.

Although *Carpenter* refused to extend "equitable principles allowing these arguments to be raised in a motion for new trial" when "a party realizes its mistake before judgment and has other avenues of relief available," that limitation did not apply to the pro se litigant because "nothing in this record suggest[ed] that before summary judgment was granted, [she] realized that her responses were late, that she needed to move to withdraw deemed admissions, or that she needed to file a response to the summary judgment raising either argument." *Id.* The Court concluded that the trial court abused its discretion in not allowing the pro se litigant to withdraw the deemed admissions because she had satisfied both prongs of the *Carpenter* test by demonstrating that her failures were not intentional or the result of conscious indifference and that the other party was not unduly prejudiced. *Id.* at 443. The Court cautioned that its holding was limited:

> We certainly agree that pro se litigants are not exempt from the rules
> of procedure. Having two sets of rules—a strict set for attorneys and a

lenient set for pro se parties—might encourage litigants to discard their valuable right to the advice and assistance of counsel. But when a rule itself turns on an actor's state of mind (as these do here), application may require a different result when the actor is not a lawyer. Recognizing that [the pro se litigant] did not know what any lawyer would does not create a separate rule, but recognizes the differences the rule itself contains.

*Id*. at 444 (citation omitted).

## C. Tho and Giang are entitled to a new trial on Kuljis's claims and their counterclaims

After the Nguyens jointly filed one answer and counterclaim in this suit through their attorney, their counsel withdrew and only Christopher, acting pro se, responded to Kuljis's no-evidence motion for summary judgment on the Nguyens' counterclaims. Tho and Giang never responded to either motion for summary judgment. Tho's and Giang's situation is analogous to that of the pro se litigant in *Wheeler*: as nonmovants, they did not file a summary judgment response and they notified the trial court of the nature of their complaints in a new trial motion. *See Wheeler*, 157 S.W.3d at 442; *see also* TEX. R. APP. P. 33.1(a).

We next turn to whether Tho and Giang satisfied their burden to demonstrate (1) good cause and (2) no undue prejudice. *Wheeler*, 157 S.W.3d at 442; *Carpenter*, 98 S.W.3d at 687–88. Tho and Giang demonstrated good cause for

their failure to respond in their motion for new trial.[6] They were pro se litigants who participated in the proceedings under the mistaken belief that Christopher's response was all that was required to respond to the motions for summary judgment. *See Wheeler*, 157 S.W.3d at 442 ("On this record, the lower courts could have concluded that [the pro se litigant] was wrong on her dates and wrong on how to correct them, but not that either was the result of intent or conscious indifference."); *see also Imkie v. Methodist Hosp.*, 326 S.W.3d 339, 346 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Imkie, therefore, meets the *Wheeler* test for establishing that her failure to respond to the motion for summary judgment and her failure to ask for an extension of time to respond to the motion for summary judgment were mistakes based on her misunderstanding of the law due to her status as a pro se litigant."). Tho and Giang's motion for new trial stated their belief that the response filed by Christopher was a sufficient response to both summary judgment motions on behalf of all of the Nguyens. They each stated that they were not aware of their mistake until after the trial court rendered judgment against them.

Tho and Giang also established that Kuljis would not suffer any undue prejudice. Their motion for new trial and accompanying affidavits state that

---

[6]     The Nguyens filed one response for all three defendants. Because the position of the three Nguyens and their arguments are not identical, we will treat them as separate motions.

12

granting a new trial and allowing the Nguyens to respond to Kuljis's claims would not cause undue delay or injury to Kuljis. Tho and Giang asserted their readiness to proceed to trial, to defend against Kuljis's claims, and to prosecute their own counterclaims, and stated their willingness to reimburse Kuljis for all reasonable expenses incurred in obtaining the summary judgment and to refund the security deposit immediately.

We conclude that, under the facts presented here, the trial court abused its discretion in denying Tho and Giang's motion for new trial.[7] *See Wheeler*, 157 S.W.3d at 443 ("We recognize that trial courts have broad discretion to permit or deny withdrawal of deemed admissions, but they cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles."); *see also*

---

[7] In *Imkie*, this Court stated that *Wheeler* extended *Craddock* to summary judgments "under limited circumstances where a pro se nonmovant appeared in person but mistakenly did not respond in writing to a matter-of-law summary judgment motion." 326 S.W.3d at 345. Thus, in analyzing whether the pro se litigant was entitled to a new trial based on the equitable principles established in *Carpenter* and *Wheeler*, the Court applied the *Craddock* test, including its second element inquiring whether the defendant established a meritorious defense. *Id.* at 346–47. However, the Texas Supreme Court subsequently clarified in *Marino* that *Wheeler* did not apply the *Craddock* test; rather, it applied the two-pronged test from *Carpenter* for determining whether a trial court should allow a late-filed summary judgment response. *See Marino*, 355 S.W.3d at 633 (holding that trial court may allow late-filed summary judgment response when party shows good cause and no undue prejudice, citing *Wheeler*). Therefore, we likewise apply the two-prong test established by *Carpenter*, *Wheeler*, and *Marino*.

*Carpenter*, 98 S.W.3d at 685 (discussing equitable principles underlying *Craddock* test).

We sustain Tho and Giang's first issue.

**D.      Christopher is entitled to a new trial only on Kuljis's claims**

Christopher asserts that his failure to respond *properly* to Kuljis's summary judgment motions was not intentional or the result of conscious indifference; rather, it was a mistake.

Turning first to Christopher's failure to respond to Kuljis's traditional motion for summary judgment, his motion for new trial included his affidavit stating his belief that he had responded to both summary judgment motions by filing a no-evidence summary judgment response. He also stated that he was unaware of his mistake until after the trial court had rendered its judgment. This establishes good cause. The proof Christopher provided of no unfair prejudice— the same as the proof provided by Tho and Giang—satisfied his burden under *Wheeler*. We therefore conclude that the trial court abused its discretion in denying Christopher's motion for new trial as to Kuljis's traditional summary judgment motion.  Christopher is entitled to defend against Kuljis's claims.

The trial court did not abuse its discretion, however, in refusing to grant a new trial on Christopher's counterclaims. Because Christopher did respond to Kuljis's no-evidence motion for summary judgment challenging the Nguyens'

14

counterclaims, *Carpenter* and *Wheeler*—which concerned failures to respond rather than inadequate responses—are not controlling. Contrary to the dissent, we do not imply that Christopher's "errors were intentional or the result of conscious indifference." Rather, we hold that the reason his response was inadequate is irrelevant because the fact that he filed a response at all takes this case outside the scope of *Wheeler*.

The dissent argues that *Wheeler* is "almost identical . . . in all material respects." It further contends that our holding that Christopher is not entitled to a new trial "directly conflicts with *Wheeler*" because the pro se litigant there "*did respond*" to the summary judgment motion orally by appearing at the hearing and responding to requests for admissions and, therefore, *Wheeler* concerns an inadequate response in addition to an untimely response. But a response to requests for admissions is not a response to a summary judgment motion.[8] And an oral response is legally no response. TEX. R. CIV. P. 166a(c) (stating that any response must be in writing); *Casso v. Brand*, 776 S.W.2d 551, 553 (Tex. 1989) ("[A]ll theories in support of a summary judgment, as well as all opposing issues, must be presented in writing to the court at the hearing."); *City of Houston v. Clear Creek*

---

[8] In *Wheeler*, the responses to requests for admission were two days late and were the only evidence to support the summary judgment. 157 S.W.3d at 442. Once the deemed admissions were set aside because the late response was not intentional and the party requesting the admissions was not prejudiced, no evidence supported the summary judgment. *Id.* at 443.

15

*Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979) (noting that response must be in writing).

Yet another reason that *Wheeler* does not apply is because Kuljis's motion to strike was filed ten days before the hearing. Christopher therefore had an opportunity to address the deficiencies in his evidence, whether by filing an amended response seven days before the hearing or requesting leave to file an amended response less than seven days before the hearing. As in *Carpenter*, the rules provided Christopher with a remedy before the summary judgment hearing. *Carpenter*, 98 S.W.3d at 686 (stating that *Craddock*'s purpose—"to alleviate unduly harsh and unjust results at a point in time when the defaulting party has no other remedy available"—does not apply "when our rules provide the defaulting party a remedy."); *see also Wheeler*, 157 S.W.3d at 442 (observing that "nothing in this record suggests that before summary judgment was granted," pro se litigant realized her mistake).

Thus, the dissent would extend *Carpenter* and *Wheeler* from the failure-to-respond cases to cases in which a party files an inadequate response because the evidence supporting the response is inadmissible. The dissent is correct that our holding grants a nonmovant more rights for failing to respond at all than responding inadequately. But this anomaly is a result of Rule 166a, which requires any summary judgment response to be in writing, and *Wheeler*, which permits an

16

inquiry into a pro se's good faith when no response is filed but not when a response is inadequate.

The dissent's proposed rule would be difficult in practice: if a nonmovant is entitled to a do-over whenever it is mistaken about the admissibility of its responsive evidence, another layer to summary judgment proceedings with its attendant costs and delays is added. This additional step would be invoked in many cases as it is not uncommon for a trial court to sustain objections to the evidence or to grant motions to strike evidence on the grounds that a party's summary judgment response contains inadmissible or defective evidence. *See, e.g.*, *CA Partners v. Spears*, 274 S.W.3d 51, 64 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (sustaining objection to, and striking, affidavit as conclusory); *Cont'l Casing Corp. v. Siderca Corp.*, No. 01-02-00442-CV, 2003 WL 853317, at *4 (Tex. App.—Houston [1st Dist.] Mar. 6, 2003, no. pet.) (mem. op.) (sustaining objection to deposition testimony that constituted inadmissible hearsay). As a result, trial courts often grant summary judgments that may not have been granted if admissible evidence had been filed. Presumably, the responding party in many of these cases could assert, post-ruling, that they "thought they had filed an appropriate response," that they "believed the response was sufficient," and that their "failure to respond properly was not intentional or the result of conscious indifference." To require trial courts to grant a new trial whenever the nonmovant

17

mistakenly files a defective summary judgment response would be to change summary judgment practice radically.[9]

The trial court should have discretion to grant a request to cure deficiencies identified at or shortly before the hearing, as it does under the rules, but it should not be required to do so. Summary judgments based on deficient responses may be unjust in particular cases, but requiring trial courts to set them aside for every mistake will also result in injustices when cases are delayed and become more expensive. The rules wisely give trial courts discretion in determining whether to allow a party to amend a defective response under the facts of each particular case. Indeed, such discretion is almost unlimited because a trial court's denial of a summary judgment is not reviewable on appeal. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996) (stating general rule that denial of summary judgment is not reviewable on appeal); *Baylor College of Med. v. Tate*, 77 S.W.3d 467, 469 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (same). As part of that discretion, a trial court may consider whether to continue the hearing to enable the nonmovant to file a new response based on arguments that are not

---

[9] Admittedly, the dissent would not require a new trial in every case of an inadequate response; the responding party would have to satisfy the two *Carpenter* factors by showing that it did not intentionally file an inadequate response—a low threshold for many defects in affidavits—and that a delay would not prejudice the moving party. By its reliance on *Carpenter* and *Wheeler*, the dissent implies that the third *Craddock* factor—a meritorious defense—does not need to be satisfied.

18

recorded because, as in this case, there is often no record of the summary judgment hearing. Conversely, those unrecorded statements may cause a trial court to believe it is "just" to rule based on the existing record despite a defect that is curable. Extending *Wheeler* to cases involving only inadequate summary judgment responses removes this broad discretion by creating a right to a new trial when the *Wheeler* standards are satisfied.

Although not explicitly stated, it appears the dissent would limit this new rule to pro se litigants. The dissent argues that "pro se defendants who, in good faith, inadequately respond to a motion for summary judgment" should be treated the same as "pro se defendants who, in good faith, fail to respond at all." Narrowing the proposed rule would improve it. But the Supreme Court ordinarily requires pro se litigants to comply with the same rules as parties represented by counsel. *See Wheeler*, 157 S.W.3d at 444. If a new rule for inadequate summary judgment responses is to be crafted for pro se litigations, it should be the Supreme Court that does so, not this intermediate court.

One other argument is worth addressing: Christopher argues that his response to the no-evidence summary judgment was "essentially . . . no response," and therefore *Carpenter* and *Wheeler* should apply. But the trial court did not strike Christopher's response in its entirety; the trial court struck only the evidence in support of the response—Christopher's affidavit and four exhibits containing ten

19

supporting documents. Kuljis objected to the evidence on five grounds: (1) Christopher's affidavit was conclusory, (2) the documents attached to his affidavit constituted inadmissible hearsay, (3) the documents were not authenticated, (4) the documents were not reliable, and (5) the documents were not relevant.[10] The trial court's order does not identify which ground it relied on in striking the evidence. Christopher does not argue that the trial court erred in striking his evidence.[11] The remainder of his response consisted of a restatement of certain legal propositions pertinent to summary judgment proceedings, an assertion that certain facts exist contrary to Kuljis's motion, and a discussion of some of the exhibits attached to the response. Thus, there was a response on file even after the court's ruling.

We sustain in part and overrule in part Christopher's first issue.

## Attorney's Fees

In their second issue, the Nguyens contend that the trial court erroneously awarded Kuljis $20,157 in attorney's fees because Kuljis presented evidence of only $16,907.18 in attorney's fees. Because the trial court erred in granting Kuljis affirmative relief on his claims against all three of the Nguyens, we conclude that

---

[10]     The affidavit does not discuss, identify, or refer to the documents.

[11]     Nor does he contend that the summary judgment motion was defective on its face so that no response was necessary.

there is no basis for the attorney's fees award without regard to the sufficiency of the evidence to support the award.

## Conclusion

We reverse the judgment of the trial court against Christopher, Tho, and Giang Nguyen on Kuljis's claims for breach of the apartment lease or contract, violations of the Texas Property Code, and fees. We also reverse the judgment against Tho and Giang Nguyen on their counterclaims. The judgment against Christopher Nguyen on his counterclaims for breach of contract, abuse of process, and malicious prosecution, however, is affirmed. We remand for further proceedings consistent with this opinion. All outstanding motions are dismissed as moot.


Harvey Brown
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.