**Affirmed and Memorandum Opinion filed August 29, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00530-CV

---

### ASSET RES SERVICES, LLC, Appellant

### V.

### PARADIGM RECOVERY AND REMARKETING LLC AND SONIA RODRIGUEZ, Appellees

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 1140142**

---

## MEMORANDUM OPINION

Following a bench trial, the trial court signed a final judgment in favor of appellees Paradigm Recovery and Remarketing LLC ("Paradigm") and Sonia Rodriguez (together with Paradigm, "Appellees"), awarding them $45,000 on their breach of contract claim. Appellant Asset Res Services, LLC ("Asset Res") appealed and asserts that (1) the evidence is factually insufficient to support Appellees' breach of contract claim, and (2) it was entitled to two offsets with

respect to the damages awarded to Appellees. For the reasons below, we affirm the trial court's final judgment.

## BACKGROUND

### *Relevant Facts*

Paradigm was an automobile recovery and repossession business owned by Rodriguez. In February 2018, Rodriguez executed two agreements to effectuate the sale of Paradigm's assets to Asset Res: an Asset Purchase Agreement and a Consulting Agreement.

The Asset Purchase Agreement states that the assets' purchase price would be $150,000, with $30,000 delivered contemporaneously with the Agreement's signing. The remainder of the balance would be paid according to the terms of the Consulting Agreement.

The Consulting Agreement provides that Asset Res would retain Rodriguez's consulting services for a two-year term, during which she would assist Asset Res with the transition of the purchased assets and the retention of customer accounts. Rodriguez would receive $5,000 monthly for the two-year duration.

The Consulting Agreement also includes a "claw back" provision that states, in relevant part:

> Based upon the twelve (12) months preceding the execution of this Agreement, [Rodriguez] has asserted that the clients of [Paradigm], as defined by the Asset Purchase Agreement executed in conjunction with this Agreement, can and will be transitioned to [Asset Res]. . . . In the event any clients on Schedule A, attached, do not transition to [Asset Res] and thus, there is no revenue from said client, [Rodriguez] agrees that the compensation of [Rodriguez] will be reduced by an amount calculated by multiplying the revenue generated for that same client during the preceding 12 months by [Rodriguez and Paradigm] by a factor of .138. . . . For purposes of this provision, a client will be

considered transitioned if retained by [Asset Res] sixty (60) days after the closing date of the Asset Purchase Agreement. . . . If the client does not transition for any reason other than solely due to the change in ownership, then this paragraph shall not apply and there shall be no reduction in the payments to [Rodriguez].

In sum, this provision states that, if any of the 193 clients listed in Schedule A are not retained by Asset Res for 60 days after the Asset Purchase Agreement is signed, Rodriguez's monthly consulting fee would be reduced by a proportionate amount. However, this provision would not apply if a client failed to transition "for any reason other than solely due to the change in ownership."

With respect to Rodriguez's work schedule, the Consulting Agreement states that she will be physically present at Asset Res's Houston office for 180 days following the agreement's signing, on a Monday-Friday regular business hours schedule. Rodriguez was allotted eight days of paid time off during this 180-day period with any additional time off deducted at $31.25 per hour missed.

After the Agreements were signed, Rodriguez began working at Asset Res's office. According to Rodriguez, Asset Res ceased making its monthly $5,000 payment in June 2019.

*Procedural History*

Appellees filed their original petition in August 2019, asserting claims for breach of contract and fraud. The trial court granted Appellees' motion for summary judgment on their breach of contract claim and Asset Res appealed. We dismissed the appeal because the summary judgment order did not constitute a final judgment. *See Asset Res Servs. LLC v. Paradigm Recovery & Remarketing LLC*, No. 14-20-00863-CV, 2022 WL 710712, at *2 (Tex. App.—Houston [14th Dist.] Mar. 10, 2022, no pet.) (mem. op.).

Back in the trial court, Asset Res moved for a directed verdict on Appellees'

fraud claim and the trial court granted the motion. Asset Res also requested that the trial court reconsider its summary judgment on Appellees' breach of contract claim. The trial court granted Asset Res's motion for reconsideration and set Appellees' breach of contract claim for a bench trial.

Trial commenced in March 2023. The trial court heard testimony from three witnesses: Rodriguez, Yolanda Reyna (Paradigm's operations manager), and Corey Cox (Asset Res's vice president). The trial court signed a final judgment on April 10, 2023, rendering judgment in favor of Appellees on their breach of contract claim and awarding $45,000 in damages. The trial court also signed findings of fact and conclusions of law. Asset Res timely filed this appeal.

ANALYSIS

In three issues on appeal, Asset Res argues:

1.  Appellees' breach of contract claim is not supported by factually sufficient evidence;

2.  the trial court failed to offset against its damages award the amount triggered by the Consulting Agreement's claw back provision; and

3.  the trial court failed to offset against its damages award the amount triggered by Rodriguez's time off in excess of that provided for by the Consulting Agreement.

For the reasons below, we overrule these issues and affirm the trial court's final judgment.

## I.     Standard of Review

In an appeal from a bench trial, the trial court's findings of fact have the same force and dignity as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Arshad v. Am. Express Bank, FSB*, 580 S.W.3d 798, 803 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Accordingly, we review the trial court's findings using the same standards of review applicable to a jury's

verdict.  *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009).

A party attacking the legal sufficiency of an adverse finding on an issue on which it had the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).  In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it.  *Univ. Gen. Hosp., LP v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 821-22 (Tex. 2005)).  Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review.  *Id*. at 551.  We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not.  *Id*.  The fact finder is the sole judge of the witnesses' credibility and the weight to be assigned to their testimony.  *Id*.  If there is more than a scintilla of evidence supporting a challenged finding, we will overrule a legal sufficiency challenge.  *CA Partners v. Spears*, 274 S.W.3d 51, 69 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

For a factual sufficiency challenge, we examine the entire record, considering both the evidence in favor of and contrary to the challenged finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Arshad*, 580 S.W.3d at 804.  When a party challenges the factual sufficiency of the evidence supporting a finding for which it did not have the burden of proof, we set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *Maritime Overseas Corp.*, 971 S.W.2d at 407; *Arshad*, 580 S.W.3d at 804.  "The amount of evidence necessary to affirm

is far less than the amount necessary to reverse a judgment." *Harris Cnty. v. Coats*, 607 S.W.3d 359, 381 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

We apply these standards mindful that this court is not a fact finder. *Maritime Overseas Corp.*, 971 S.W.2d at 407. Accordingly, "[w]e may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence." *Arshad*, 580 S.W.3d at 804. The trier of fact is the sole judge of the witnesses' credibility and the weight to be assigned to their testimony. *Harris Cnty.*, 607 S.W.3d at 381.

## II.    Breach of Contract

To establish a claim for breach of contract, a plaintiff must prove the following elements: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages. *Arshad*, 580 S.W.3d at 804. In its first issue, Asset Res asserts the evidence is factually insufficient to support the second element regarding Appellees' performance or tendered performance.

> With respect to this element, the trial court found as follows:
>
> In the Final Asset Purchase Agreement, the parties executed a valid, enforceable contract that Paradigm would be sold to Asset Res, with Rodriguez assisting in the transfer. Paradigm was transferred to Asset Res and Rodriguez was providing her consultation services in exchange for the agreed upon payments.

Considering the record as a whole, this finding is supported by factually sufficient evidence.

Testifying at trial, Rodriguez said she owned Paradigm from 2011 to 2018. In February 2018, Rodriguez signed the Asset Purchase Agreement as Paradigm's sole owner, agreeing that Paradigm would "sell, transfer, convey, assign and

6

deliver to [Asset Res], assets of [Paradigm's] business." These assets included "all customer relationships" and "all goodwill of [Paradigm] relating to the Business."

Rodriguez also signed the Consulting Agreement, in which she agreed to provide consulting services to Asset Res for two years. In this role, Rodriguez agreed to "assist with transition of the Purchased Assets, the establishment of trade secrets and relationship knowledge of customers, and the retention of the accounts acquired by [Asset Res] pursuant to the Asset Purchase Agreement."

Testifying at trial, Rodriguez agreed that she "perform[ed] all of [her] obligations under the consulting agreement" and said that she "had done nothing wrong" with respect to the contract's terms. Rodriguez went through three clients in particular that (1) were listed as key Paradigm accounts, (2) transitioned to Asset Res after the agreements' signing, and (3) continued to be Asset Res clients more than 60 days after the transaction was closed. According to Rodriguez, Asset Res did not "make [her] aware of any key accounts that did not transition within the first 60 days."

The trial court also heard testimony from Yolanda Reyna, Paradigm's operations manager. Reyna testified that Paradigm "did everything that [it] w[as] supposed to do to effectuate that transfer" to Asset Res. According to Reyna, Paradigm did not do anything to breach the contracts nor was she aware of any "key accounts" that ceased to be Asset Res clients within the first 60 days after the agreements were signed.

Finally, the trial court heard testimony from Corey Cox, vice president of Asset Res. Cox testified that five key client accounts did not transfer over within the first 60 days of the transaction's closing. Cox said these accounts' failure to transfer over was due to a "[c]hange of ownership." Turning to the Consulting Agreement, Cox testified that Rodriguez failed to "com[e] in as consistently as she

7

was supposed to." Cox said Rodriguez had complied with the terms of the Consulting Agreement "for the first month or so" but "slowly started not coming in or having to leave early for appointments or, you know, saying she would be available by phone."

Considering the record as a whole, the challenged finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Maritime Overseas Corp.*, 971 S.W.2d at 406-07; *Arshad*, 580 S.W.3d at 804. Rodriguez and Reyna testified that the contracted-for assets were transferred to Asset Res in accordance with the parties' agreements. Rodriguez also testified that she "perform[ed] all of [her] obligations under the consulting agreement" and did not breach the parties' contracts.

Against this backdrop was Cox's controverting testimony, in which he stated that certain assets were not transferred to Asset Res and that Rodriguez did not fulfill the terms of the Consulting Agreement. But this evidentiary conflict rested squarely within the trial court's province as fact finder and is a determination we decline to revisit on appeal. *See Harris Cnty.*, 607 S.W.3d at 381; *Arshad*, 580 S.W.3d at 804.

We conclude the challenged finding is supported by factually sufficient evidence and overrule Asset Res's first issue.

## II. Offset

In his closing argument, Asset Res's counsel requested that the trial court offset two amounts against any assessed damages: (1) $17,781.16 triggered by the Consulting Agreement's claw back provision as applied to Millenium Capital and Recovery, and (2) $2,500 triggered by the additional ten days Rodriguez took off in excess of the eight days allotted under the Consulting Agreement. After the

parties rested, the trial court rendered judgment for Appellees on their breach of contract claim and reserved its damages determination pending an additional assessment of the claw back provision and Rodriguez's time off.

In its findings of fact and conclusions of law, the trial court again noted Asset Res's request for two offsets against any damages awarded to Appellees. However, the trial court ultimately found that Asset Res was not entitled to any offsets and awarded Appellees their fully-requested amount of $45,000.

In its second and third issues on appeal, Asset Res asserts the trial court erred by not applying these two offset amounts to the $45,000 judgment and requests that we modify the trial court's judgment accordingly. We construe these arguments as evidentiary sufficiency challenges with respect to the trial court's related factual findings. Because we conclude these findings are supported by legally and factually sufficient evidence, we overrule Asset Res's second and third issues.

### A. Claw Back Provision

As set out above, the Consulting Agreement includes a claw back provision stating that, if any of the 193 clients listed in Schedule A are not retained by Asset Res for 60 days after the Asset Purchase Agreement is signed, Rodriguez's monthly consulting fee would be reduced by a proportionate amount. However, this reduction to Rodriguez's monthly fee would occur only if a Schedule A client was not retained "solely due to the change in ownership." Asset Res asserts that Millenium Capital and Recovery (one of the 193 clients listed on Schedule A) was not retained for 60 days after the Asset Purchase Agreement was signed and, therefore, the awarded damages should have been reduced by the amount provided for in the claw back provision.

9

But the trial court heard conflicting evidence on this point. On cross-examination, Asset Res's counsel had the following exchange with Rodriguez:

**Counsel:** You stated that one of the accounts you — in your testimony you stated that one of the companies failed to transfer over before the effective date of the asset purchase agreement and the consulting agreement and I'm clarifying — is that correct?

**Rodriguez:** That client was still a client when we sold the company.

**Counsel:** In your testimony you said one client failed to transfer because they were no longer a client of yours?

**Rodriguez:** That is not the client I was talking about.

**Counsel:** What client were you talking about?

**Rodriguez:** The client that never came over was Millenium. We were waiting for a contract or something regarding that account.

**Counsel:** What contract were you waiting on?

**Rodriguez:** To resign the contract with Millenium.

**Counsel:** Why didn't you resign the contract?

**Rodriguez:** It was just procedure. We e-mailed them to get them signed back over at the time.

**Counsel:** So you didn't have — at the time you did not have that contract executed so you did not currently have them as a current client, correct?

**Rodriguez:** No. They were not a client — no. They did not come over. When we sold in February, they had not come over in February.

**Counsel:** Were they a client of yours on February 1st of 2018?

**Rodriguez:** Yes. They were — I don't remember. We would have to — I don't remember if they were a client.

**Counsel:** When you stated that one of the companies was not a client at the time of the asset transfer agreement, consulting agreement were executed, which client was that?

**Rodriguez:** I was referring to Millenium.

**Counsel:** So then Millenium was not a client at the time of the execution of the agreements?

**Rodriguez:** We did not execute the new contract with them. That's why I stayed there and worked for the six months. I tried to get them back on board. I don't know if they ever came back or not on contract.

**Counsel:** But at the time you executed the consultant agreement, they were not a client of Paradigm?

**Rodriguez:** Yes, they were a client. I don't know if they ever came into the contract again.

\*        \*        \*

**Counsel:** So you never signed the contract. There was no contract signed with Paradigm and Millenium at the time you executed on behalf of Paradigm the asset purchase agreement and the consulting agreement; is that correct?

**Rodriguez:** Millenium was a client of Paradigm Recovery and, yes, Millenium was a client for Paradigm.

**Counsel:** Then when you stated that one of the companies was not currently a client of Paradigm at the time the agreements were executed, which client was that then?

**Rodriguez:** I was talking about Millenium when it transferred over. That's the one I was waiting for them to go over.

Later during her cross-examination, Rodriguez responded "yes" when asked: "Did Millenium Capital cease to be a client within the first 60 days?"

Considering the entirety of Rodriguez's testimony, it is unclear if or when

11

Millenium ceased to be client of Paradigm and if this cessation occurred before the execution of the agreements with Asset Res. Likewise, this testimony does not provide any reason regarding why Millenium ceased to be a client as necessary to trigger the Consulting Agreement's claw back provision.

In contrast, Cox testified that Millenium was one of five key client accounts that did not transfer over within the first 60 days after the transaction's closing. When asked why Millenium failed to transfer over, Cox replied: "Change of ownership."

Viewing this evidence in the light most favorable to the challenged finding and indulging every reasonable inference in its favor, it does not warrant sustaining Asset Res's legal-sufficiency challenge. *See CA Partners*, 274 S.W.3d at 69. The evidence does not conclusively establish when Millenium ceased to be a client of either party or the reason for its departure. Therefore, it does not establish all vital facts contrary to the challenged finding. *See Dow Chem. Co.*, 46 S.W.3d at 241.

Similarly, the challenged finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *See Maritime Overseas Corp.*, 971 S.W.2d at 407. Accordingly, we also overrule Asset Res's factual-sufficiency challenge.

We overrule Asset Res's second issue on appeal.

### B. Rodriguez's Performance Under Consulting Agreement

In its third issue, Asset Res requests that the trial court's $45,000 damages award be reduced by $2,500 "because Sonia Rodriguez failed to make herself available for ten days beyond the allotted eight days permitted for paid time off under the Consulting Agreement."

But again, conflicting evidence underpins the challenged finding denying the

requested offset. At trial, Rodriguez agreed that she "perform[ed] all of [her] obligations under the consulting agreement." Rodriguez testified that she took some time off in February but did not state how many days this comprised. Rodriguez said she ceased coming into the office on July 11, 2019, after "the owner of the company . . . gave [her] time off because [she] had a sister that was sick at the time."

In contrast, Cox testified as follows when asked whether Rodriguez complied with the Consulting Agreement's in-office obligations:

> For the first month or so, it had gone by the terms of the consulting agreement from 9:00 to 5:00 she was in the office. After that she slowly started not coming in or having to leave early for appointments or, you know, saying she would be available by phone. She did mention that there was a vacation in there. It was just consistently trying to get in touch with her. There was [sic] also e-mail exchanges about the fact that we were concerned that she wasn't holding up to her end of the consulting agreement by not coming in as consistently as she was supposed to.

When asked for the specific date that Rodriguez "stopped coming in," Cox responded: "I believe consistently it was April-May time frame."

In sum, the evidence does not establish exactly when Rodriguez stopped coming in to Asset Res's office nor does it conclusively show that these absences were without permission. Construed with respect to the applicable standards of review, this evidence does not warrant revisiting the trial court's finding denying Asset Res's requested $2,500 offset. *See Dow Chem. Co.*, 46 S.W.3d at 241; *Maritime Overseas Corp.*, 971 S.W.2d at 407.

We overrule Asset Res's third issue.

## CONCLUSION

Having overruled all of Asset Res's issues on appeal, we affirm the trial

13

court's April 10, 2023 final judgment.


          /s/     Meagan Hassan
                   Justice


Panel consists of Justices Jewell, Zimmerer, and Hassan.